**JACKSON JORDAN, INC., Appellee,**

v.

**PLASSER AMERICAN CORPORATION, Appellant.**

**JACKSON JORDAN, INC., Appellant,**

v.

**FRANZ PLASSER BAHNBAUMASCHINEN – INDUSTRIEGESELLSCHAFT m.b.H. and Plasser American Corporation, Appellees.**

Nos. 83–1374, 83–1386.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1984.

See also, Fed.Cir., 725 F.2d 1373.

Alfred H. Plyer, Jr., Chicago, Ill., for appellants.

Phillip H. Mayer, Chicago, Ill., for appellee; Stephen G. Rudisill and H. Michael Hartmann, Chicago, Ill., on brief.

Samuel J. Webster, Norfolk, Va., of counsel.

Before DAVIS, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

These appeals are from the judgment in a consolidated Civil Action No. 82–825–N,

*Jackson Jordan, Inc. v. Plasser American Corporation,* before the U.S. District Court for the Eastern District of Virginia, Norfolk Division, reported at 219 USPQ 922 (1983). We reverse the holding that Patent No. 3,494,297 is invalid under 35 U.S.C. § 102(b). This holding depended in part on giving a collateral estoppel effect, with which we disagree, to the decision in *Plasser American Corporation v. Canron, Inc.,* 546 F.Supp. 589, 217 USPQ 823 (D.S.C.1980) on the scope of the claims. Accordingly, we vacate the judgment of invalidity and remand for further proceedings. In all other respects the judgment is affirmed.

### Background

In Appeal No. 83–1374, Plasser challenges the correctness of the district court's application of the doctrine of collateral estoppel and the effect given to a stipulation; Jackson Jordan asserts error in the failure of the court to find (1) estoppel due to Plasser's delay in bringing suit, and (2) fraud (i.e., inequitable conduct) in connection with procurement of the '297 patent, and, in Appeal No. 83–1386, the cross-appeal, asserts error in dismissing its anti-trust claim also based on the alleged fraudulent procurement.

### I.

The invention of the '297 patent is directed to a mobile track grading, lining, and tamping machine used in the maintenance of railroad tracks. The development of equipment in this field is fully described in the district court opinion, as well as in the *Canron* decision, and will not be repeated. Suffice here to know that in the mid-1960's it was conventional to have one machine (a tamper) first perform the vertical operation, that is the lifting of the rails and the tamping of ballast under the rails. This was followed by a separate lining machine, which correctly positioned the rails laterally. The difficulty in this sequential procedure was that the lining machine tended to spoil the vertical positioning that the tamper had just achieved. The objective in the industry, thus, was to develop a single machine which could perform both the lifting and lining operations. Several machines were developed (by different companies) which placed the lining means on the front or rear end of the tamper with ballast shoes or anchors outside the rails to take the force of the thrust necessary for lateral alignment. Such machines encountered problems because the ballast on the shoulder of the road bed was generally loose and the ballast shoes would slip from the lateral force. The invention of Plasser's '297 patent was directed to this specific problem. By suspending the lining means on the frame (sometimes referred to herein as the bridge) between the axles of a tamper, the frame of the tamper took the force from lining and transferred the force to the rails. Ballast anchors for alignment were thereby eliminated.

In the '297 patent, a number of embodiments are described wherein the lining means and the lifting means are placed in various positions along the frame of a combined lifting, lining and tamping machine. In one embodiment, Figure 11, lifting means, shown to include a ballast jack, are mounted on the frame of the tamper which extends in front of the front axle. Lining means (which do not utilize a ballast anchor) are mounted between the axles.

Figure 11, which is the center of the present controversy, appears as follows:

This embodiment of the invention is described in the specification as follows:

A track lifting means 209 is also schematically shown and may take any suitable or conventional form, this means being positioned in accordance with the invention forwardly of the front axle 203. The illustrated embodiment [Figs. 11–14] is a hydraulic jack including cylinder 210 vertically movably supporting a shoe 212 engaging the surface 211 of the ballast or road bed, magnetic or mechanical rail clamping means cooperating with the shoe to lift the track.

The operation of Figure 11 is further described as follows:

When the machine of FIG. 11 reaches a track section to be resurfaced, it is stopped and the track lifting means 209 forwardly of the front axle is operated to level the track to the desired extent. The positioning of the track lifting means in relation to the front axle causes the latter to be lifted slightly with the track whereon it rests adjacent the lifting means. The leveled track section between the axles of the machine is now fixed at the desired grade by tamping and any necessary latreal [sic] alignment is effectuated by aligning means 107 [sic; 207] positioned behind the tamping means. The lateral alignment proceeds at a point where the track remains substantially in contact with the ballast so that no errors in the previously fixed grade are caused by the alignment, the full weight of the heavy machine resting on axles 202 and 203 to aid in downward pressure of the track against the tamped ballast. As the track is thus intermittently and progressively resurfaced section by section, the laterally operating

ballast compacting means is operated to compact the ballast on each side of the track.

II.

The issue of collateral estoppel involves the interpretation of Claims 1 and 2 found by the district court here to have been given by the *Canron* court in the prior litigation.

Claim 1 of the '297 patent, in issue in this appeal and in *Canron*, is the following:

1. An improved mobile track maintenance machine arranged for movement on the track in the direction of track elongation and comprising a carriage frame having two ends, a front truck and a rear truck respectively supporting each carriage frame end for movement on the track, track tamping means and track grading means mounted on the carriage frame, the track grading means being constructed to lift the track and the tamping means being arranged to fix the track in the lifted position by tamping ballast under spaced ties supporting the track, and means for laterally aligning the track mounted on the carriage frame intermediate the trucks.

Dependent Claim 2, also in issue, reads:

2. The mobile track maintenance machine of claim 1, further comprising a reference line for laterally aligning the track in relation thereto, another reference line for grading the track in relation thereto, and a front bogie movable on the track and supporting one of the ends of both reference lines.

Also pertinent to our analysis is dependent claim 3:

3. The mobile track maintenance machine of claim 1, comprising pairs of said track aligning means, and further comprising pairs of said tamping means mounted on the frame forwardly of respective ones of said track aligning means in the direction of said trucks, and pairs of track lifting means mounted on the machine forwardly of the trucks, each of said pairs of means being symmetrically arranged on the machine in respect of a midpoint of the machine in the direction of the track elongation.

The district court held that the *Canron* court found the claims *valid* because one skilled in the art would know that "the claims require *lifting* between the axles as in 'bridge-type machines'" and *"preclude the use of ballast jacks."* (Emphasis added.) Further, the district court found that these limitations were necessary to the *Canron* court's decision on *non-obviousness.*

Using this narrow interpretation, the district court then held Claims 1 and 2 *invalid* because of a pre-trial stipulation by the parties. The parties had stipulated that a Plasser machine 06–32L, which was displayed at a Chicago trade show in March 1965, falls within the scope of the Claim 1 of the '297 patent. Thus, to avoid the statutory bar of 35 U.S.C. § 102(b), Plasser must have an effective filing date for its U.S. patent application within a year of that date.[1] The district court rejected Plas-

ser's entitlement to an October 1965 date through an earlier filed application '288 because of lack of support therein for Claim 1 as narrowly interpreted. The Figure 11 embodiment was carried forward from the earlier copending '288 application.[2] Claim 1 also had its origin in the '288 application but not in precisely the same terms. The limitation "means for laterally aligning ... intermediate the trucks" is, however, the same.

Plasser urges that Claim 1, *in haec verba* and in light of the specification, requires only lining means intermediate the axles or trucks and it is only in connection with lining that ballast anchors may not be used. Thus, under Plasser's interpretation, support for Claim 1 is found in Figure 11, even though that embodiment of the invention employs ballast jacks for lifting, and lifting means are in front of the front axle. The limitation of lining means intermediate the trucks is met by Figure 11.

According to Plasser, Claim 1 also covers the 06–32L embodiment, illustrated below, which has lifting and lining means in front of the front axle.[3] This embodiment requires a boom or beam which extends in front of the front axle and rests on a third truck. The boom transfers the reaction of lining to the rails and, thus, no ballast anchors are needed for lining. Plasser and Jackson Jordan agree that the lining means of 06–32L is "intermediate the trucks" as called for by the claim.

---

1. 35 U.S.C. § 102(b) provides:

 A person shall be entitled to a patent unless—

 \* \* \* \* \* \*

 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ....

2. The '297 patent issued on an application which combined the '288 application and another application '077, filed December 1966.

3. The 06–32L machine, which was shown in Chicago in March 1965, is the subject of the pre-trial stipulation in issue.

1572

PLASSER DUOMATIC 06-32L

TAMPING-LEVELLING-LINING-MACHINE

The 06–32L machine is the subject of the pre-trial stipulation in issue. Plasser asserts that, if the claim is given a narrow interpretation of requiring lifting between the axles, the 06–32L machine does not fall within Claim 1, since, like the Figure 11 species, lifting is *not* between the axles (trucks) inasmuch as the boom and the truck on which it rests play no role in the lifting process. Thus, Plasser urges that one meaning is being given to the claim to exclude Figure 11 and another to include

06–32L. Jackson Jordan does not dispute that the auxiliary front truck used in the lining process has no function in connection with lifting. Nevertheless, Jackson Jordan argues that the lifting means meets the added limitations since it is located between the back axle and the auxiliary truck.

Also, per Plasser, another embodiment of Claim 1 is the commercial machine 06–16 developed for the United States in 1969 which corrects the track vertically, as well as horizontally, between the axles:

PLASSER UNIVERSAL 06-16

TAMPING-LEVELLING-LINING-MACHINE

Jackson Jordan does not assert that anything in the claim language, the specification, the file history of prosecution, or the

prior art references prevents Plasser from asserting the broad interpretation of claim 1 put forth here or even points in the

direction of adding the limitations of lifting between the axles without ballast shoes to claim 1 which underlies the trial court's decision of invalidity. Jackson Jordan's position would be meritless but for certain language in the *Canron* analysis of obviousness.[4]

With respect to obviousness, the *Canron* court found Stewart Patent No. 3,271,619, cited by the examiner, to be the closest prior art, and, using the limitation language set out in Claim 1, distinguished it from the '297 invention, as follows:

> Finally, Stewart '619 does not disclose or suggest means for laterally aligning the track mounted on the carriage frame intermediate the trucks in a combined leveling, lining tamper, so that the lining reaction is taken by the rails rather than by the ballast on the shoulder of the track (Tr. 535, 796, 979). Thus Stewart '619 fails to disclose *the essence of the '297 invention.* [Emphasis added.]

546 F.Supp. at 599, 217 USPQ at 831. This description of differences in the '297 invention over the prior art would find support in the Figure 11 embodiment.

After considering another reference, the "Autoliner", Canron's own machine which utilized an overhung tamper in which the lifting and lining reactions were transmitted to the ballast through a ballast-engaging jack shoe, the court stated:

> In conclusion, none of the prior art *discloses or suggests the addition of a boom to the front of an overhung leveling tamper*, to which boom is connected one or more lining cylinders so that the track lining takes place at, or adjacent to, the point of lifting and tamping and the *lining reaction* is taken by the rails through the boom, rather than on the

ballast. Nor does any of the prior art disclose or suggest a combined tamping, leveling, and lining machine in which the *lining reaction* is taken between the axles of the machine on the rails, instead of on the ballast. [Emphasis added.]

546 F.Supp. at 600, 217 USPQ at 832. These differences over the prior art are germane to the 06–32L embodiment.

Had the *Canron* analysis of differences over the art ended at that point, no support for an interpretation incorporating limitations of lifting between the axles without ballast shoes could be found in the opinion. However, the *Canron* court went on, stating:

> This court *also* finds that Claims 1 and 2 of Plasser's '297 patent in suit differ significantly from the prior art in that they call for means for laterally aligning the track mounted on the carriage frame intermediate the trucks with track-tamping and track-grading means on the carriage frame so that lifting, lining and tamping all take place on the carriage frame with the vertical and horizontal reactions therefrom being taken by the rails rather than the ballast. [Emphasis added.]

546 F.Supp. at 600, 217 USPQ at 832. This differentiation over the prior art reflects the 06–16 embodiment.

The above statement is the principal basis for asserting that *Canron* held that lifting between the axles without ballast shoes were limitations in the claims.[5]

One matter of interpretation not readily apparent is that the *Canron* court concluded that one skilled in the art would understand that the claim is not addressed merely to physical location of lining means, but

---

**4.** Jackson Jordan's expert testified that Figure 11 would support Claim 1 but for estoppel.

**5.** Other statements mentioned by the trial court here do not relate to obviousness, i.e., a background description of the 06–16 machine developed for the U.S. market, which does lift and line between the axles, and a statement in a section on indefiniteness (35 U.S.C. § 112).

The court was also reinforced in its estoppel decision by testimony of the inventor, Mr. Theurer. Mr. Theurer acknowledged that the '297 patent covers a full bridge machine, identifying the 06–16 as such a machine. He also acknowledged that Figure 11 shows lifting by ballast shoes and was not such a machine. It does not, however, follow from this testimony that the '297 patent does not also cover Figure 11.

to reaction forces therefrom. 546 F.Supp. at 607, 217 USPQ at 838 n. 16.

As a final matter, we note that all of the facts here with respect to the purported § 102(b) bar were present in the *Canron* litigation. Further, the *Canron* court made a finding that there was none. This finding was discounted by the trial court on the ground that the § 102(b) issue was stipulated, not actually litigated, before the *Canron* court.

Plasser disputes that the interpretation given to the *Canron* court decision is correct and disputes that, in any event, collateral estoppel can be invoked under the circumstances.

### III.

The analysis by the district court's decision of collateral estoppel is set forth in the following paragraphs from its decision:

Under the doctrine of collateral estoppel "relitigation of issues actually determined in a prior lawsuit" is prohibited. *See Lujan v. U.S. Department of the Interior,* 673 F.2d 1165, (10th Cir.1982); *Stoudt v. Guggenheim,* 651 F.2d 760, 764, 210 USPQ 359, 363-64 (CCPA 1981). The principle underlying the doctrine is "simply that later courts should honor the first actual determination of a matter that has been litigated." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4416. Thus, the doctrine incorporates the recognition that a party should not be permitted to prevail in successive lawsuits by taking "inconsistent positions." *United States v. Webber,* 396 F.2d 381, 386 (3rd Cir.1968).

Several recent Supreme Court opinions have held that the doctrine of collateral estoppel may be applied even though the party asserting the doctrine was not a party in the prior action. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322 [99 S.Ct. 645, 58 L.Ed.2d 552] (1979); *Blonder-Tongue Labs, Inc. v. University of Ill. Foundation,* 402 U.S. 313 [91 S.Ct. 1434, 28 L.Ed.2d 788], 169 USPQ 513 (1971). To apply the doctrine, however, the Court must find that "the party

against whom estoppel is being asserted, was accorded a full and fair opportunity to litigate in the [prior] court proceeding the very issues which he now seeks to relitigate ...."

\* \* \* \* \* \*

Because the question as to the proper interpretation of claims 1 and 2 has been previously litigated, the Court holds that Plasser is bound by the *Canron* interpretation of the claims at issue and may not advance a new and inconsistent interpretation of claims 1 and 2.

219 USPQ at 931.

It appears that the court intended to apply principles of collateral estoppel by *judgment* to the issue of claim interpretation, i.e., the scope of the claim, including the principle of *Blonder-Tongue* that mutuality of parties need not, in most cases, be required. However, the court also relied on precedent of the Third Circuit, the *Webber* case, which is directed to the wholly separate doctrine of estoppel based on "preclusion of inconsistent positions".

It appears from the above-quoted passages that the district court combined these divergent doctrines. At best, the basis for the court's decision is unclear and is further obfuscated by its ruling excluding evidence proffered by Jackson Jordan to show what Plasser had actually argued in the *Canron* suit. The court ruled that only the *Canron* court's decision itself was significant, not the attorney's arguments. However, if the doctrine of preclusion of inconsistent positions was being invoked, the positions taken by the party in successive disputes, rather than the decision of the court on a particular issue, would be the significant factor. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4477 (1981).

■ Further complicating the analysis, we find nothing in the record here to indicate that at the time of the stipulation as to the 06–32L machine that the collateral estoppel defense based on the *Canron* litigation had been, or would be, raised. Since collateral estoppel is an affirmative defense

which must be pleaded, *Blonder-Tongue,* 402 U.S. at 350, 91 S.Ct. at 1453, 169 USPQ at 527, and is, in any event, premised on principles of fairness, *id.* at 349, 91 S.Ct. at 1453, 169 USPQ at 527, the question of the interrelation of the stipulation as to 06–32L and the claim interpretation imposed by collateral estoppel should have been considered. The district court here refused to release Plasser from the pre-trial stipulation that precluded it from taking a legitimate alternative position—namely, that the 06–32L did not meet the narrowly interpreted claim and did not, therefore, constitute a statutory time bar to its application under § 102(b). Such an alternative position is clearly permitted under Fed.R.Civ.P. 8(e)(2).

## IV.

### *Collateral Estoppel*

"Collateral estoppel" is an umbrella term identifying a number of concepts directed to precluding litigation. Collateral estoppel may be "collateral" in the sense that an estoppel is effected on a different claim between the same parties who have previously litigated a particular issue. "Collateral" also is used in the sense that an estoppel may be invoked by one who has not previously litigated with his adversary, what is generally called unilateral collateral estoppel.

Collateral estoppel may be based on the operative effect of a prior judgment, in which case it has long been part of the law of *res judicata* recognized in all federal courts. *Commission of Internal Revenue v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). It may also be based, in some jurisdictions, simply on a reversal of a party's position, either in the context of prior litigation or by prior con-

duct wholly outside the courtroom. *See, e.g., United States v. Webber,* 396 F.2d 381 (3rd Cir.1968).

Further, an estoppel may be invoked to defend against a claim brought by the same plaintiff against either a party or non-party to the first action. *Blonder-Tongue, supra.* It may, in more limited instances, be used offensively to establish a claim against a party defendant who previously litigated the same matter with another and lost. *Parklane Hosiery Co. v. Shore,* 439 U.S. at 331, 99 S.Ct. at 651.

Since each of these different situations involves different considerations, it is critical to delineate which aspect of *res judicata* and/or collateral estoppel is being considered. To this end this court has followed the terminology set out in § 13 of the *Restatement (Second) of Judgments* (1982) in a number of decisions [6], and we find it useful to do so again.

Within the context of the law of *res judicata,* collateral estoppel will be termed "issue preclusion." [7] Outside the principles of *res judicata* (that is, not dependent on the effect of a prior judgment) collateral estoppel will be called "preclusion of inconsistent positions."

In the above terms, this case deals with unilateral defensive issue preclusion and unilateral defensive preclusion of inconsistent positions.

## V.

### *Issue Preclusion*
#### A.

The basic principle of issue preclusion is stated in the *Restatement* as follows:

§ 27. Issue Preclusion—General Rule

When an issue of fact or law is actually litigated and determined by a valid and

---

**6.** *Chromalloy American Corp. v. Kenneth Gordon (New Orleans), Ltd.,* 736 F.2d 694, 696–97, 222 USPQ 187, 189–90 (Fed.Cir.1984); *International Order of Job's Daughter's v. Lindeburg & Co.,* 727 F.2d 1087, 1090–91, 220 USPQ 1017, 1019 (Fed.Cir.1984); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569–72, 221 USPQ 394, 397–99 (Fed.Cir.1983); *Young Engineers v. USITC,* 721 F.2d 1305, 1314–15, 219 USPQ 1142, 1150–51 (Fed.Cir.1983).

**7.** The *Restatement* extracts from the case law of *res judicata* two distinct concepts "claim preclusion" and "issue preclusion". For a discussion of these concepts, see *The Young Engineers v. USITC,* 721 F.2d 1305, 1314–15, 219 USPQ 1142, 1150–51 (Fed.Cir.1983).

final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

■ As a general proposition, this principle has been accepted and applied by this court. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091, 220 USPQ 1017, 1019 (Fed. Cir.1984). In accordance with the general rule, this court has found no issue preclusion estoppel when the finding relied on was not essential, *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 218 USPQ 965 (Fed.Cir.1983) or was not litigated, *The Young Engineers v. USITC*, 721 F.2d 1305, 1314, 219 USPQ 1142, 1150 (Fed.Cir.1983).

This court has not previously had occasion to explore exceptions to the basic rule. With respect to the present case, the most pertinent of the exceptions set out in the *Restatement* at § 28 is the following:

§ 28. Exceptions to the General Rule of Issue Preclusion

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action;

Since Jackson Jordan is a stranger to the earlier litigation, additional exceptions come into play. Turning again to the *Restatement* for initial guidance, we find in § 29 the following proposition:

§ 29. Issue Preclusion in Subsequent Litigation with Others

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

\* \* \* \* \* \*

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

\* \* \* \* \* \*

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action ...;

\* \* \* \* \* \*

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

Accordingly, we must determine, first, whether Jackson Jordan's position could be maintained by Canron and, if so, whether Jackson Jordan, a non-party, should be entitled to the same advantage. On each ground, we hold that Jackson Jordan's position must fail.

## B.

■ As an initial matter Plasser argues, in effect, that if Jackson Jordan seeks to rely on part of the *Canron* opinion, it must take it all, including the finding of no § 102(b) bar. While we do not endorse this as a general principle, we do agree that the *Canron* decision must be read as a whole. However, the § 102(b) bar issue in *Canron* does not appear to have been litigated, but rather resulted, as the district court here found, from a stipulation.[8] Thus, Canron

**8.** *Restatement (Second)*, Vol. 1 at 256–57:

An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties. A stipulation may, however, be binding in a subsequent action

would not be estopped to relitigate the § 102(b) bar in subsequent litigation.

### C.

With respect to application of issue preclusion *against Plasser*, we see no basis on which Canron (if Canron, rather than Jackson Jordan, had been the defendant in this litigation) could extract from the prior suit an abstract "scope of the claim" determination as an issue resolved against Plasser by the prior suit and use it in connection with relitigation of the issue of a § 102(b) bar.

This is not to say that claim interpretation may not be the basis for issue preclusion or may not be invoked by a non-party. In *Blonder-Tongue*, the suggestion that a patentee may be estopped to relitigate other issues in addition to patent validity is readily apparent. As stated therein:

> It is clear that judicial decisions have tended to depart from the rigid requirements of mutuality. In accordance with this trend, there has been a corresponding development of the lower courts' ability and facility in dealing with questions of when it is appropriate and fair to impose an estoppel against a party who has already litigated an issue once and lost.
>
> \* \* \* \* \* \*

When these judicial developments are considered in the light of our consistent view—last presented in *Lear, Inc. v. Adkins* [395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) ]—that the holder of a patent should not be insulated from the assertion of defenses and thus allowed to exact royalties for the use of an idea that is not in fact patentable or *that is beyond the scope of the patent monopoly granted*, it is apparent that the uncritical acceptance of the principle of mutuality of estoppel expressed in *Triplett v. Lowell* [297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936) ] is today out of place. Thus, we conclude that *Triplett* should be over-

ruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid. [Emphasis added.] 402 U.S. at 349–350, 91 S.Ct. at 1453, 169 USPQ at 527.

In the *A.B. Dick* case, this court was asked to give effect to a prior claim interpretation in subsequent litigation. In prior litigation against a different alleged infringer, A.B. Dick, the patent owner, had won on the issue of validity and had lost on the issue of infringement. In addition, the first court set out a specific finding (over the patent owner's objection) delineating the "scope of the claim." In rejecting an estoppel which the second infringer urged with respect to the "scope of the claim" finding, this court interposed several hurdles to application of the doctrine. Significantly, *A.B. Dick* holds that judicial statements regarding the scope of a claim are *hypothetical* "[e]xcept in the context of validity or infringement," and that:

> In view of the foregoing, we hold that judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement; further that such statements should be narrowly construed....

713 F.2d at 704, 218 USPQ at 968.

Inherent in the above-quoted statements is the concept that the interpretation of the claim had to be the reason for the loss on the issue of infringement. Theoretically, it would be possible to look only at claim interpretation as a separate and distinct issue from validity or infringement and determine whether a party won or lost on that sub-issue regardless of what happened on the larger issue. In a sense, a party can be said to have "lost" if it urged a broad scope of the claim, and the court upheld validity on a narrower interpreta-

between the parties if the parties have manifested an intention to that effect. Furthermore under the rules of evidence applicable in the jurisdiction, an admission by a party

may be treated as conclusive or be admissible in evidence against that party in a subsequent action.

tion. However, if a claim is held valid and infringed on a narrower than necessary basis, the patent owner cannot appeal. Thus, under the first exception to issue preclusion noted in *Restatement* § 28(1) (availability of review), Canron could not invoke an estoppel against Plasser since Plasser won on both validity and infringement. *A fortiori*, Jackson Jordan has no better rights.

### D.

We have set out above the *Restatement's* pertinent exceptions, applicable to Jackson Jordan in its own right, because, regardless of the validity of the defense by *Canron,* Jackson Jordan cannot prevail.

■ Jackson Jordan argues that the third of the three quotations from the *Canron* opinion set out above is the finding of the court on the "scope of the claim." We disagree. There is no more reason in logic to pick the third statement than the second, which, under Jackson Jordan's theory, would require inserting the limitation of a boom into claim 1. Indeed, the opinion under Jackson Jordan's theory would have to be read as setting out at least three inconsistent claim interpretations. Thus, the circumstances fall under the fourth stated exception against unilateral estoppel: the determination relied on as preclusive was itself inconsistent with another determination of the *same* issue.

■ From the three statements in *Canron,* with respect to differences over the prior art, it appears that the *Canron* court thought it necessary or desirable to distinguish *each embodiment* of the '297 invention of record from the prior art rather than focusing directly on the claim language *per se.* The *claims,* not particular embodiments, must be the focus of the obviousness inquiry. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). *Cf. Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 902, 221 USPQ 669, 680 (Fed.Cir.1984) ("Infringement is determined by comparison with the pat-

entee's claimed invention, not with its marketed product.").

Only the first analysis by the court, which does not refer to lifting between the axles, fits the claim language *per se.* Further, this interpretation is consistent with the specification, the drawings, the file history, and the other claims, in particular, claim 3, which is dependent on claim 1 and which specifically provides for lifting *in front of* the front axle.

Were it necessary to do so, a strong case could also be made for no estoppel in accordance with *Restatement* § 29(8) (other special circumstances), because of the stipulation which appears to be inconsistent with the claim interpretation given by the trial court here. If, in addition, there was a failure to plead collateral estoppel, we question the equity of interjecting this issue at a late stage of trial in the face of the stipulation.

### VI.

*Preclusion of Inconsistent Positions*

■ Jackson Jordan's other argument is directed to estoppel arising simply from the position Plasser is taking here in contrast to its position before the *Canron* court, that is, an estoppel based on inconsistent positions.

As set out in Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4477, at 779 (1981), the doctrine is described as follows:

Rules against assuming inconsistent positions in successive suits form another body of preclusion doctrine that has little to do with the central rules of preclusion by judgment. Courts do not relish the prospect that an adept litigant may succeed in proving a proposition in one suit, and then succeed in proving the opposite in a second. At worst, successful assertion of inconsistent positions may impose multiple liability on an adversary or defeat a legitimate right of recovery. At best, the judicial system is left exposed to an explicit demonstration of the frailties that remain in adversary

litigation and adjudication. The theories that have evolved to avoid these risks by precluding assertion of inconsistent positions do not draw directly from the fact of adjudication. Instead, they focus on the fact of inconsistency itself. As compared to the occasionally intricate rules of preclusion by judgment, these rules do not provide any refined or highly developed principles. The concern is to avoid unfair results and unseemliness. This concern is informed by all the traditional common law views of fair dealing that might be expected. [Footnote omitted.] *See also Restatement (Second)*, Vol. 1 at 4.

Because of the absence of defined principles, the doctrine has been criticized, as it is basically an "ad hoc" decision in each case. In the view of Judge Learned Hand, a previously inconsistent position which does not fit into principles of estoppel by judgment should be accorded no more than the status of evidence in a subsequent suit. *Bertha Building Corp. v. National Theatres Corp.*, 248 F.2d 833, 836 (2nd Cir.1957) (Hand, J., dissenting).

Some courts which have espoused "preclusion of inconsistent position" have attempted to give the doctrine definition. Generally, there must be "representation, reliance and prejudice", 1B *Moore's Federal Practice*, § 0.405[8], at 239 (1983).[9] It may be that a party has been victimized by an adversary's conduct. Alternatively, it may be that the court itself feels it has been misused. In all precedent cited to us and which we have researched independently, the party against whom estoppel is invoked received some benefit from the previously taken position, i.e., he "won" because of it and he seeks to "win again" from his original adversary (or one in privity with that person or involved in the same transaction) on a basis which contradicts the prior position.

No case is cited where the doctrine was applied in favor of a total stranger to the first phase of the dispute, such as Jackson Jordan, or indeed, outside the context of a particular set of related transactional facts. Thus, the trial court plowed new ground here in relying, in part, or alternatively, on the doctrine of preclusion of inconsistent positions.

A frequently cited authority which reflects the variation of the doctrine involving prejudice to a party is *Scarano v. Central Railroad of New Jersey*, 203 F.2d 510 (3rd Cir.1953) in which an employee sued his employer because of a total disability, received a settlement, and immediately sued for reinstatement to his job, asserting he was never disabled. Because of the complete about-face, claimant was stopped from proceeding beyond pleadings.

In *U.S. v. Webber*, 396 F.2d 381 (3rd Cir.1968), cited by the district court, a party successfully defended a claim for moneys due on the theory that it represented an illegal contingent fee for obtaining a government contract. The party was held precluded in a subsequent suit by the government (for breach of that contract because of the contingent fee arrangement) from asserting that there had been no contingent fee arrangement. The offense in *Webber* appears to rest in the reliance by the court on the original representations.

In contrast, the instant case does not involve a black to white reversal of position. Rather, Jackson Jordan argues that Plasser advanced a *narrow* interpretation in *Canron* and is here advocating a *broader* interpretation. The initial difficulty with this argument is that Plasser also advanced a broad interpretation in *Canron*. Further, the language in *Canron*, as discussed above, supports both positions. Thus, it is difficult to ascertain any offense to the court.

In actuality, Jackson Jordan is asserting not "inconsistent" positions in successive

---

**9.** The following additional limitations have been stated in various opinions: applies only to reversal on factual issues; must involve sworn statement; must be before the same court; must be the same party; must be *same* litigation, i.e., no reversal between trial and appeal or between consolidated cases; can be avoided unless fraudulent; must be inconsistent not alternative positions, i.e., assert A for one purpose and B for another purpose.

law suits, but rather that Plasser won on the basis of the narrow claim interpretation; that the narrow claim interpretation was necessary to the holding on obviousness; and that Plasser should be bound. This, however, is merely the converse of the "issue preclusion" theory, i.e., that Plasser "lost" on a broad interpretation of the claims. The proposition gains nothing from being looked at in a mirror.

In any event, we see no justification for wholly dispensing with reliance and prejudice as minimum requirements under the doctrine of preclusion of inconsistent positions. Here, Jackson Jordan has asserted no personal reliance on the *Canron* decision or prejudice to its litigation of the issues by reason of the *Canron* decision. Nor is any affront to the court apparent. Thus, we reject the view that, under any theory of preclusion of inconsistent positions, the doctrine would be applicable in this case.

### Conclusion

We have considered all other appealed issues and *affirm* on the basis of the trial court's opinion.[10] We *reverse* the holding of collateral estoppel and *vacate* the judgment that U.S. Patent No. 3,494,297 is invalid under § 102(b).

The case is *remanded* for proceedings consistent herewith.

#### Appeal No. 83–1374

AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.

#### Appeal No. 83–1386

AFFIRMED.

DAVIS, Circuit Judge, concurring in the result.

Though I concur in the result, I do not agree with the breadth of several of the general statements in Judge Nies' too-sweeping opinion, nor with her treatment of the *Canron* opinion, and therefore write

separately—confining myself strictly to the issue of whether appellant is bound by the reading by the court below of the *Canron* opinion. I find that opinion considerably more murky than apparently does the prevailing opinion here,[1] but I am satisfied that, as a whole, it should not be read as holding that Judge Hemphill thought it necessary to interpret the '297 claims as requiring *lifting* between the axles in order to distinguish the prior art and to uphold the validity of the claims. There are several statements in that opinion as to the lifting mechanism, but the key problem seems to have been the location of the *lining* reaction and forces. That was stressed by Judge Hemphill. At best for Jackson Jordan, the *Canron* opinion is ambiguous on the precise point, and *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704, 218 USPQ 965, 968 (Fed.Cir.1983), counsels that such ambiguous prior statements (regarding the scope of a claim) in a holding of validity "should be narrowly construed" in later litigation. That direction requires that the ambiguous *Canron* opinion should be read as not necessarily interpreting the claims, despite their wording, as calling for lifting between the axles and precluding the use of ballast jacks.

As for Plasser's possible taking of inconsistent positions, it appears that Plasser's attorneys did argue in *Canron* that, if necessary to sustain validity, the claims should be construed as the District Court below held that Judge Hemphill thought they should be. That argument seems, however, to have been an alternative one, not the sole or even primary ground for upholding validity. This is not enough to come within the bar of "inconsistent positions," especially since we cannot conclude that the *Canron* court actually adopted that alternative stance in order to uphold the patent. I add, however, that in my opinion it is unwise, unnecessary, and inappropriate to discuss generally and broadly

---

10. By affirming "on the basis of" the trial court's opinion, this court does not thereby adopt the opinion as binding precedent.

1. I take account of several statements not set forth by Judge Nies' opinion.

at this early stage of this court's history the whole question of preclusion by inconsistent positions (as the prevailing opinion does in its Part VI). Prudence counsels greater restraint in a case where the overall question does not have to be resolved at all.[2]

2. I concur fully in affirmance on the issues, other than collateral estoppel and invalidity of the '297 patent under § 102(b).