**B.E. MEYERS & CO., INC., and
Brad E. Meyers, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 97–120C.

United States Court of Federal Claims.

Aug. 21, 2000.

D. William Toone, Bellevue, Washington, for plaintiffs.

Chun–I Chiang, with whom were Assistant Attorney General Frank W. Hunger, Director Vito J. DiPietro, and John Fargo, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This action is brought by plaintiff[1] pursuant to 28 U.S.C. § 1498(a) (1994). Plaintiff alleges that certain infrared illuminators purchased by defendant from non-party Insight Technology Corporation infringe on four of plaintiff's patents. Currently pending are defendant's motion in limine to exclude evidence of trade secrets, Insight's motion for a protective order, and defendant's motion to compel production of plaintiff's documents and appendix.

The motions are fully briefed, and argument is deemed unnecessary. For the following reasons, defendant's motion in limine is granted, Insight's motion for a protective order is denied, and defendant's motion to compel is granted in part and denied in part.

## BACKGROUND[2]

Plaintiff seeks damages from the United States based on alleged infringement of four of its patents for certain night vision devices. These devices, referred to as "infrared illuminators," are designed to brighten the low-light level images seen by night vision equipment. Plaintiff's original illuminator patent issued in 1987, and plaintiff obtained a reissue patent in 1991. The three other patents claimed by plaintiff in the suit were also issued in 1991, and all three were based on a common application filed in early 1990.

After obtaining its patents, plaintiff continued to fine-tune its devices, and in 1994 plaintiff began discussions with the Navy regarding the Navy's possible interest in purchasing a number of plaintiff's infrared illuminators. The parties' discussions focused largely on a night vision telescope or weapon sight generally referred to by the plaintiff as the AN/TVS–5. Naval personnel visited plaintiff's manufacturing facility in June 1994, and prior to touring the facility the two Navy representatives signed a standard BEM document entitled "Non–Disclosure Agreement." Following this visit, contacts between plaintiff and the Navy continued, culminating in the Navy's decision to purchase several TVS–5s with laser illuminator systems. Plaintiff referred to the complete product offered for sale to the Navy as the

1. Brad E. Meyers is founder and president of Brad E. Meyers, Inc. ("BEM"). Mr. Meyers, as well as BEM, appear as parties in this action. They will be referred to collectively as "plaintiff."

2. The background facts are drawn from defendant's motion in limine, plaintiff's response, and the undisputed facts adduced in the parties cross-motions for summary judgment, which were the subject of this court's July 21, 2000 opinion. See B.E. Meyers & Co. v. United States, 47 Fed.Cl. 200 (2000).

TVS–5 Super–Biocular Laser Illuminator System ("TSLIS").

In September 1994, the Navy executed a sole source contract for the procurement of five TSLISs from BEM. The contract called for BEM to execute certain modifications to its standard TSLIS, including use of a more advanced image intensifier tube, inclusion of a mounting bracket for mounting the TSLIS onto a machine gun, and inclusion of an extra large eyepiece called the "Super Biocular" that is attached to the TVS–5 to permit easy viewing of the night scene by the illuminator's operator. Another sole source contract was executed in early 1995, resulting in the purchase of seven additional TSLISs from BEM.

Also in early 1995, the Navy began preparing draft specifications that it intended to use to facilitate competitive procurement of future infrared illuminators. Plaintiff received a copy of the draft specifications in July 1995, and returned the draft along with plaintiff's suggestions shortly thereafter. In mid–1996, the Navy issued solicitation No. N00164–96–R–0003, which contained performance specifications for an Advanced Crew Served Weapon Sight/Laser Illuminator System ("ACSWS/LIS"). It was during the pre-award stage of this procurement that plaintiff notified the Navy of its belief that the performance specifications listed in the solicitation were directed towards a device that would infringe plaintiff's patents and proprietary designs. Both plaintiff and non-party Insight Technology submitted proposals. The Navy awarded the contract to Insight in April 1997. Plaintiff filed suit in this court on February 25, 1997, seeking damages for infringement of its patents.

## DISCUSSION

### Defendant's motion in limine

Defendant moves to exclude evidence of trade secrets alleged to have been misappropriated as a result of the specifications followed by Insight in manufacturing illumi-

nators pursuant to its 1997 contract with the Navy. Defendant's belief that plaintiff will seek to introduce evidence of misappropriated trade secrets is based on plaintiff's responses to defendant's interrogatories. Defendant inquired as to whether plaintiff contends that defendant improperly disseminated plaintiff's trade secrets, and plaintiff responded in the affirmative:

> The trade secrets [which were improperly disseminated] consist of the proprietary know-how and concepts disclosed in the Performance Specifications for the development and manufacture of the ACSWS/LIS systems described in government contract numbers, N00164–97–D–0008 (PS/94/8852/004 & PS/95/8852/008), N00104–94–C–K840 and N00104–95–C–K812.[3]

In response to another interrogatory, plaintiff also provided specific examples of trade secrets it contends were improperly disseminated. This list of trade secrets is drawn from a 1994 letter sent by plaintiff to one of the Navy representatives involved in the Navy's early efforts to procure illuminators from BEM.

Along with the interrogatories described above, defendant inquired as to plaintiff's views on why the alleged improper dissemination of trade secrets was relevant to the patent infringement issues in the current action. Plaintiff's initial contention, in response to defendant's interrogatory, was that "The existence, procurement, utilization and dissemination of Meyers' trade secrets by the Government . . . rebuts Defendant's affirmative defenses of obviousness and prior art with regard to invalidity and un-enforceability of the patents at issue. Secondary considerations of non-obviousness are highly relevant to those allegations." Plaintiff's response to defendant's motion in limine offers two additional arguments in support of relevance. The first is that proof of improper dissemination of plaintiff's trade secrets is relevant to proving that the government copied plaintiff's device and thus infringed plaintiff's patents. The second is that copying of

---

**3.** The first contract listed by plaintiff is the 1997 contract awarded to Insight; the numbers in parentheses represent the performance specifications issued as part of the solicitation for that

contract. The other two contracts listed are the sole source contracts under which plaintiff provided illuminators to the government in 1994 and 1995.

plaintiff's trade secrets can be evidence of intentional infringement, which plaintiff argues is relevant to the possibility of an award of attorney's fees under 28 U.S.C. § 1498(a).

■ Defendant seeks to prevent plaintiff from introducing evidence of the alleged improper dissemination of its trade secrets. It first argues that the court must reject such evidence on jurisdictional grounds. Defendant contends that because trade secrets are usually presented in the context of a breach of contract claim, and because plaintiff has not invoked the court's jurisdiction over contract disputes pursuant to 28 U.S.C. § 1491(a), the court does not have jurisdiction to entertain allegations regarding improper dissemination of trade secrets. This argument is misplaced. Plaintiff's amended complaint does not assert any trade secret claims against the government, and its response to defendant's motion emphasizes that plaintiff has no intention of amending its complaint to include such a claim. If relevant, proof of improper dissemination of trade secrets would only be relied on by plaintiff in connection with other issues in the case, and not as an independent ground for seeking relief from the court. There is no jurisdictional bar to introducing such evidence, even if, in a different context, such evidence could also be used to support a claim over which the court had no jurisdiction. *Cf. Wood v. United States*, 961 F.2d 195, 198 (Fed.Cir.1992) (noting that Tucker Act jurisdiction can be invoked even where evidence used to establish breach could also support elements of tort claim over which the Court of Federal Claims would lack jurisdiction); *Badgley v. United States*, 31 Fed.Cl. 508, 514 (1994) (same).

■ Defendant next argues that plaintiff's trade secret evidence is irrelevant. In its responses to defendant's interrogatories, plaintiff cites as its primary basis for introducing trade secret evidence the need to rebut defendant's contention that plaintiff's patent claims are invalid for obviousness under 35 U.S.C. § 103 (1994). Section 103 renders invalid a patent for any device whose configuration and means of construction was rendered obvious by prior art at the time the patent in question was issued. The obvious-ness of a claimed invention must be determined in light of four factors: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the prior art and the claims at issue; and (4) any secondary considerations surrounding the origin of the patented subject matter. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Plaintiff asserts that evidence of improper dissemination of its trade secrets qualifies as the type of "secondary considerations" of non-obviousness discussed in *Graham* and its progeny.

■ There must be a nexus between any evidence of secondary considerations and the invention for which patent protection is invoked. *See Cable Elec. Prod., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026 (Fed.Cir. 1985) ("[a] nexus is required between the merits of the claimed invention and the evidence of secondary considerations."). The patent claims themselves must be the focus of any obviousness inquiry. *See Jackson Jordan Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1578 (1984). Because of this, any evidence of secondary considerations must be directed to the claimed features of the invention as disclosed in the patent itself. *See In re Vamco Mach. and Tool, Inc.*, 752 F.2d 1564, 1577 (1985). Typical secondary considerations include commercial success of the claimed invention, a long-felt need in the industry for the invention, approval of the claimed invention in the relevant community, and copying of the claimed invention. *See generally* 2 Donald S. Chisum, *Chisum on Patents*, § 5.05 (1999).

Defendant argues that plaintiff's trade secret evidence is not relevant to rebut obviousness because plaintiff cannot establish the requisite nexus between the trade secrets it alleges were disseminated and the specific patent claims it asserts were infringed. This could be expected, because, as defendant points out, the protection afforded by the trade secret and patent regimes is mutually exclusive. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480–81, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). Once information is disclosed in a patent claim, it becomes public information, and thus can no longer qualify

as a trade secret. *See id.* Conversely, if information regarding a particular aspect of a device or technical process is genuinely proprietary, then it is not apparent how copying of such information by a third party bears on whether some other, separate, aspect of the device, embodied in a patent claim, was or was not obvious at the time the device was patented. Indeed, plaintiff does not cite any cases in which a court considered improper dissemination of trade secrets as a relevant secondary consideration in connection with an obviousness inquiry.

Plaintiff's own brief bears out the lack of a nexus between its trade secrets evidence and the patent claims at issue in this suit. Plaintiff argues that it is using the term "trade secrets" as shorthand for "know-how, improvements, manufacturing processes and the like." Despite this definitional elasticity, plaintiff fails to provide any specific examples of a direct connection between its know-how, improvements, and manufacturing processes, and the claimed features of its invention as embodied in the language of the particular patent claims it alleges were infringed. Indeed, plaintiff appears to concede that the technical innovations allegedly disseminated here are separate from the patent claims themselves. Plaintiff acknowledges that "[t]he relevant patent claims had all issued by no later than 1991, and—as with any invention—Meyers had developed refinements and innovations which made the technology even more useful." [4] *See* Pl.'s April 28, 2000 Response in Opposition to Def.'s Motion in Limine at 7. In addition, plaintiff states that "As described in its interrogatory answers as well as the detailed descriptions it provided the government of its devices, Meyers had developed improvements and refinements to its patented technology *beyond the specifications shown in its patent.*" *See* Pl.'s Response at 8 (emphasis added). Meyers' conflation of the non-patented features of the device it marketed and the patented features of its claimed invention does not provide relevant evidence of secondary considerations. *See Jackson Jordan, Inc.,* 747 F.2d at 1578 ("The *claims,* not particular embodiments, must be the focus of the obviousness

inquiry.") (emphasis in original); *In re Hiniker Co.,* 150 F.3d 1362, 1369 (Fed.Cir.1998) ("Hiniker's proffered facts, including its evidence of secondary considerations of nonobviousness, are not commensurate with the claim scope and are therefore unpersuasive. The invention disclosed in Hiniker's written description may be outstanding in its field, but the name of the game is the claim.").

■ Plaintiff's other argument in support of using its trade secret evidence to rebut obviousness is that the trade secrets are examples of advantages which flow from the claimed invention, and that such advantages must be considered to rebut any claim of obviousness. Advantages that qualify as relevant secondary considerations of non-obviousness, however, must flow from the claimed device itself, rather than from refinements and improvements that exist apart from the claimed features. *See In re Vamco Mach. and Tool,* 752 F.2d at 1577 (rejecting appellant's evidence of secondary considerations and finding that the features claimed in the patent had no connection to the features of the device that resulted in commercial success and satisfied a felt need in the industry); *see also Preemption Devices, Inc. v. Minnesota Mining and Mfg. Co.,* 732 F.2d 903, 907 (Fed.Cir.1984). As noted above, plaintiff cannot demonstrate the necessary connection between the advantages it wishes to cite as secondary considerations, which even plaintiff admits were based on improvements and refinements occurring after the patents had issued, and the features of the device embodied in the patent claims themselves.

■ Along with secondary considerations of non-obviousness, plaintiff also contends that its trade secrets evidence is relevant to show infringement. Plaintiff offers no legal support, however, for the proposition that copying refinements and know-how not protected by a patent can somehow constitute evidence that the accused party also infringed the patent itself. The Supreme Court has stated that in determining whether an accused device or composition infringes a

---

4. Plaintiff's letter listing a number of the innovations that it wishes to use to rebut obviousness is dated July 11, 1994. *See* Def.'s App. to Motion in Limine, Vol. 1, Ex. 14.

valid patent, resort must be had in the first instance to the words of the claim. *See Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 612, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). It is settled that "[i]nfringement is determined by comparison with the patentee's claimed invention, not with its marketed product." *See Jackson Jordan, Inc.,* 747 F.2d at 1578 (quoting *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 902 (Fed.Cir.1984)). Defendant correctly argues that even under the doctrine of equivalents, on which plaintiff relies, infringement only occurs where there is equivalence between each limitation in a patent claim and each corresponding element in the accused device. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Similarities between non-patented features of plaintiff's illuminator and corresponding elements of the accused devices are therefore irrelevant to determining whether plaintiff's patents have been infringed.

Plaintiff's final contention in regard to the relevance of its trade secrets evidence is the assertion that improper dissemination or copying of such secrets can be used to demonstrate intentional infringement of plaintiff's patents, and that the presence of intent is relevant to determining whether to award attorney's fees to a successful claimant pursuant to 28 U.S.C. § 1498(a). The first flaw in plaintiff's logic is that plaintiff once again improperly equates copying of its trade secrets with infringement of its patents. As noted above, the law does not support plaintiff's blurring of the two concepts.

■ Additionally, even if it were true that in some settings copying of trade secrets could be probative of intentional patent infringement, that mode of analysis is not relevant here. Defendant is correct that section 1498(a) is compensatory rather than punitive in nature, and that the question of intent is therefore not relevant to determining the size of an award under section 1498(a). Because the government has the right to use patented inventions for the public good, infringement by the government is treated as an exercise of eminent domain, rather than tortious conduct, as would be the case with private litigants. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1283 (Fed.Cir.1988); *TVI Energy Corp. v. Blane,* 806 F.2d 1057, 1060 (Fed.Cir.1986). The government's right to use patented inventions renders the intent inquiry irrelevant. Once unauthorized use by the government is established, the patent owner can be compensated for all damages stemming from that unauthorized use, potentially including attorney fees incurred in filing the suit. *See Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958, 969–70, *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The patent owner may not receive increased damages based on punitive considerations, *see id.,* even though such damages might be available to a litigant in a private lawsuit. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1468 (Fed. Cir.1997). Although it is true that section 1498(a) permits a denial of attorney fees where the position of the government was substantially justified or where special circumstances make an award unjust, the inquiry into "substantial justification" is generally restricted to the government's conduct and positions during the litigation, as opposed to the nature of the alleged infringement. *See Gargoyles Inc. v. United States,* 45 Fed.Cl. 139, 148 (1999).

■ For the foregoing reasons, the court finds that evidence regarding "trade secrets," as characterized by plaintiff, is irrelevant to the issues presented in this case. Plaintiff must support its infringement claims with evidence relating to the patent claims themselves, rather than evidence relating to later improvements and refinements to plaintiff's illuminator devices. Defendant's motion in limine is granted.

### Insight's motion for protective order

On March 31, 2000, non-party Insight Technology moved for a protective order barring plaintiff from engaging in written or oral discovery of Insight on matters relating to alleged trade secret violations. Insight contends that plaintiff's efforts to introduce evidence regarding misappropriation of its own trade secrets will open the door to extensive and burdensome inquiry by plaintiff into the

proprietary technical aspects of Insight's illuminators. Insight, relying on many of the same arguments presented in defendant's motion in limine, argues that plaintiff's trade secret evidence is irrelevant, and that plaintiff should not be permitted to inquire about trade secrets embodied in Insight's devices if the only purpose of such inquiry is to facilitate an irrelevant comparison between non-patented aspects of the competing illuminators.

In seeking a protective order shutting down a particular area of potential discovery, Insight bears the burden of proof. *See Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1025 (Fed.Cir. 1986). While the court is sympathetic to some of Insight's concerns regarding the undefined nature and scope of plaintiff's potential discovery, the court nonetheless concludes that Insight's motion for a protective order must, for the present, be denied. Insight has not indicated any specific discovery request or subpoena to which it objects. Insight complains that this is because plaintiff has not defined the trade secrets in which it may be interested. Although it is true that plaintiff has not provided as much specificity as it might have, its response to Insight's motion does contain some details regarding the type of information plaintiff seeks:

> What Meyers needs to know from Insight is whether, how, and when Insight tried to develop technology similar to Meyers' patents, and whether it failed or succeeded; Insight's experience with any prior art relied upon by the government to prove obviousness; and the extent of Insight's independent development or understanding of Meyers' claimed inventions apart from what [Insight] had been told by the government.

*See* Pl.'s Response to Insight's Motion for Protective Order at 4. While this explanation could be viewed as indicating a desire to delve into irrelevant areas, it also implicates plaintiff's legitimate interest in the accused devices and the process by which they were created. Some such inquiries, depending on the specific questions asked or the specific documents sought, are undeniably legitimate subjects for discovery. The difficulty at this stage of the proceedings is that the definition of a "trade secret" as that term is used by the parties is far from precise, and what Insight considers a "trade secret" might be viewed by plaintiff as merely a copy of a protected element of one of plaintiff's patented devices.

The court's decision to grant defendant's motion in limine may limit the need for inquiry regarding features of Insight's devices that mirror or relate to non-patented features of plaintiff's own illuminators. Beyond this, a preemptive protective order granting Insight *carte blanche* to ignore any discovery request that it felt impinged on whatever it defined as a trade secret would likely hinder plaintiff's legitimate efforts to compare the asserted patent claims with the features of the accused devices. Insight's motion for a protective order barring written or oral discovery on matters relating to alleged trade secret violations is therefore denied. This denial is without prejudice to Insight's ability to object to specific discovery requests that it finds objectionable during the remainder of discovery.

*Defendant's motion to compel production*

On May 26, 2000, defendant moved to compel production of documents from plaintiff. The documents in question were reviewed and selected by counsel for defendant after a trip to plaintiff's document storage facility. After defendant made its selections, plaintiff informed defendant that approximately 177 pages of the material defendant's counsel selected would not be produced, on the grounds that the material was not relevant to any of the patent claims asserted by plaintiff in this lawsuit. Defendant disagrees, arguing the withheld material is relevant. Defendant also complains that plaintiff's post-inspection screening was unauthorized, and that plaintiff failed to heed the court's instructions to conduct a proper pre-inspection screening intended to sift out documents that plaintiff felt were irrelevant. Defendant argues that plaintiff should therefore be compelled to produce all of the documents selected by defense counsel during his inspection.

Although plaintiff should have conducted a pre-inspection screening, the court will not direct it to produce documents that are not

relevant. The granting of defendant's motion in limine excluding evidence of trade secrets has rendered moot defendant's need to obtain most of the withheld documents, because the argument advanced by defendant as to the relevance of these documents is that they were needed to rebut plaintiff's trade secret arguments. As for Bates Nos. 006172–6180, 006182–6186, and 006190–6259, however, the court concludes that they potentially could shed light on the proper construction of the asserted patent claims and on technical aspects of the alleged infringement by the AN/PEQ–2 illuminator device.[5] Plaintiff is therefore directed to produce all non-privileged portions of these particular documents. As to all other documents covered by defendant's motion, however, the motion is denied.

## CONCLUSION

Defendant's motion in limine is granted. Non-party Insight Technology's motion for a protective order is denied. Defendant's motion to compel is granted in part and denied in part, as set forth above.

---

5. The AN/PEQ–2 is one of the accused illuminator devices that allegedly infringes on plaintiff's patents.