■ MECHANICAL PLASTICS CORP. et al., Respondents, v RAWLPLUG COMPANY, INC., et al., Appellants.—In an action to recover damages for breach of contract, fraud and deceit, unjust enrichment and quasi contract, the defendants appeal from an order of the Supreme Court, Westchester County (Ingrassia, J.), entered August 23, 1984, which denied their motion to dismiss the complaint pursuant to CPLR 3211 (a) (2), (4), (5) and (7).

Order modified, on the law, by granting that branch of the defendants' motion which sought to dismiss the fraud and deceit cause of action. As so modified, order affirmed, without costs or disbursements.

The plaintiff Thomas McSherry was employed as a consultant pursuant to a contract with the defendant Die Cast & Forge Corporation (hereinafter Die Cast). The contract provided that McSherry would disclose to Die Cast "inventions" created by him during his employment, whether the "inventions" were patentable or not, and that Die Cast would retain the exclusive rights to licenses to manufacture, use and sell such products throughout the United States and the world. McSherry was to be paid royalties for the sales of his "inventions", the rate depending upon whether McSherry's patent counsel believed the "invention" to be patentable or not. The obligation to pay royalties would not end with the termination of the employment contract, but would end either when the patent expired (if one was obtained) or 10 years from the date of manufacture. McSherry was to receive royalties from Die Cast "upon such inventions, developments, products and improvements of which MCSHERRY is the inventor or co-inventor, developer or co-developer".

In 1977, while employed by Die Cast, McSherry disclosed a design for a plastic wall anchor. Upon termination of his employment in September of 1977, McSherry was allegedly told by the defendants that his wall anchor was inoperative and unsatisfactory, and that Die Cast did not intend to market the wall anchor or assist anyone in obtaining a patent thereon. On or about May 16, 1979, defendant Louis Giannuzzi, an employee of Die Cast who had worked with McSherry during the term of his employment, applied for a patent on a plastic wall anchor. The patent was issued on or about June 23, 1981. In 1979, the defendants Die Cast and The Rawlplug Company, Inc. (hereinafter Rawlplug) began to man-

ufacture and sell the Giannuzzi wall anchor. In addition, Rawlplug has issued a sublicense to one Semco Plastic Co., Inc. to manufacture the Giannuzzi wall anchor.

The plaintiffs alleged that the two wall anchors were functionally equivalent and began an interference proceeding in the Patent and Trademark Office in 1981 in an effort to have McSherry declared the first inventor of the wall anchor and have the patent issued in his name. The Board of Patent Appeals and Interferences determined in 1985 that Giannuzzi was entitled to the patent on his wall anchor. The Board's decision was affirmed by the United States Court of Appeals for the Federal Circuit on March 18, 1986 *(McSherry v Giannuzzi,* Appeal No. 85-2753). The plaintiffs contend that since the wall anchor sold by Die Cast was invented or developed by McSherry during his employment with Die Cast, they are entitled to royalties under the contract for sales by Die Cast, and on sales made by the sublicensee. The complaint asserts causes of action sounding in breach of contract, quasi contract, unjust enrichment, and fraud and deceit. The fraud causes of action alleged that when McSherry left his employment in 1977, the defendants stated that they did not intend to market the wall anchor and did not intend to seek a patent on the wall anchor. These statements were allegedly false when made, and the defendants at that time allegedly intended to market and apply for a patent on the wall anchor.

The defendants argue that New York State courts do not have jurisdiction over the subject matter of the asserted claims. This contention is without merit. "It is firmly settled that the Federal courts have exclusive jurisdiction, and the State courts are ousted of jurisdiction, *only if the action brought 'arises under' the Federal patent laws.* Thus, actions involving contracts relating to patents—or copyrights—are not considered suits arising under those laws, and are properly brought in the State court, even if the validity of the patent may somehow be involved and the plaintiff could have brought suit for its infringement in the Federal court. In other words, the fact that the foundation for suit is a contract granting patent rights and that the plaintiff must rely on the patent in support of his cause of action is not determinative and neither vests the Federal court with jurisdiction nor deprives the State court of power to entertain the action" *(American Harley Corp. v Irvin Indus.,* 27 NY2d 168, 172, *cert denied* 401 US 976).

Moreover, it is clear that our courts can, where it is necessary to do so in order to decide the case before them, pass

upon the scope, validity, or the infringement of a patent *(see, American Harley Corp. v Irvin Indus., supra,* at p 173). The key is the distinction between "questions" arising under the patent laws, which our courts may entertain, and "cases" arising under the patent law, which our courts are precluded from hearing *(see, American Harley Corp. v Irvin Indus., supra,* at p 174; *accord, Airco Alloys Div. v Niagara Mohawk Power Corp.,* 65 AD2d 378; *American Tech. Indus. v Howard,* 190 USPQ 435, *affd* 50 AD2d 881).

The instant action involves construction of the language of McSherry's employment contract, and only peripherally involves questions concerning patents. The contract does not require that McSherry receive a patent on his "invention" before royalties will be paid; he is to receive royalties "upon such inventions, developments, products and improvements of which MCSHERRY is the inventor or co-inventor, developer or co-developer", which is clearly a broader standard than requiring a determination of patentability by the Patent and Trademark Office. It appears that only the amount of the royalty depends upon whether the "invention" is patentable or not, and this determination is to be made by McSherry's patent counsel, not the Patent and Trademark Office. Thus, the New York courts have jurisdiction over the asserted causes of action.

The first branch of the fraud cause of action alleges that the defendants, at the time McSherry left their employ, stated that they did not intend to market the wall anchor, and that this statement was false when it was made. While intentionally false statements of what a party intends to and will do can constitute the misrepresentation necessary to assert a fraud cause of action *(see, Adams v Gillig,* 199 NY 314; *Brown v Lockwood,* 76 AD2d 721), there must also be detrimental reliance by the party to whom the misrepresentation was made *(see, Demov, Morris, Levin & Shein v Glantz,* 53 NY2d 553; *Brown v Lockwood, supra).* The instant complaint fails to state how the plaintiffs relied to their detriment upon the defendants' allegedly false statement of intention. Therefore, the first branch of the fraud cause of action must be dismissed.

The second branch of the fraud cause of action, alleging that the defendants fraudulently applied for a patent, has not been timely interposed. The Statute of Limitations for actual fraud is six years from the commission of the fraud or two years from the time of discovery *(see,* CPLR 213 [8]; 203 [f]; *Abbate v Abbate,* 82 AD2d 368, 386; *Quadrozzi Concrete Corp.*

*v Mastroianni,* 56 AD2d 353, 358, *appeal dismissed* 42 NY2d 824). In the instant case, the allegedly fraudulent acts were committed in 1977, and plaintiff McSherry discovered the fraud in 1981, when he brought the interference application. Thus, the Statute of Limitations expired in 1983. Since this action was commenced, and the fraud cause of action was thereby interposed, in 1984, it should have been dismissed as untimely. Lazer, J. P., Mangano, Brown and Kooper, JJ., concur.