Thomas W. McSHERRY, Plaintiff,

v.

Louis N. GIANNUZZI and The Rawlplug Company, Inc., Defendants.

No. 86 Civ. 4746 (JES).

United States District Court, S.D. New York.

July 17, 1989.

Brauner Baron Rosenzweig Kliger Sparber Bauman & Klein, New York City, for plaintiff; Mel P. Barkan, of counsel.

Seed & Berry, Seattle, Wash., for defendants; Paul T. Meiklejohn, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

In this action, the plaintiff seeks a judgment pursuant to 35 U.S.C. § 256 (1982) declaring him the joint inventor of the invention claimed in United States Patent

Nos. 4,197,781 ("the '781 patent") and 4,274,324 ("the '324 patent"), and an order directing the Commissioner of Patents and Trademarks to correct the patents accordingly. These patents were issued to defendant Louis N. Giannuzzi and licensed to the defendant Rawlplug Company ("Rawlplug").[1]

The defendants move for summary judgment on the grounds of res judicata and judicial estoppel. The plaintiff cross-moves for summary judgment, asserting collateral estoppel in his favor. For the reasons that follow, the defendants' motion is denied. The Court certifies for interlocutory appeal the order denying the defendants' motion for summary judgment on the ground of res judicata. The plaintiff's motion is denied.[2]

## BACKGROUND

The parties to this action have been adversaries for most of this decade. The history of this case is detailed in *McSherry v. Giannuzzi*, 227 U.S.P.Q. 868 (Bd. of Pat. App. & Int.1985), *aff'd*, 790 F.2d 95 (Fed. Cir.1986), and *Mechanical Plastics Corp. v. Rawlplug Co.*, 119 A.D.2d 641, 501 N.Y. S.2d 85 (2d Dep't 1986). The following brief summary is taken substantially from these two opinions.

On December 9, 1975, McSherry entered into a written consulting agreement with Die Cast & Forge Company ("Die Cast"), a wholly owned affiliate of the defendant Rawlplug. Rawlplug guaranteed the performance of Die Cast. *See McSherry, supra*, 227 U.S.P.Q. at 870; Affidavit of Thomas W. McSherry ("McSherry Aff."), Ex. F. Pursuant to the agreement, McSherry was to develop and design new products and improve old ones for Die Cast. Die Cast was granted the exclusive right and license to manufacture, use and sell any invention developed by McSherry under the agreement. If Die Cast failed to exercise this right within four years of the time an invention was disclosed to it, all rights to the invention reverted to McSherry. In return, McSherry was entitled to royalties, which were calculated by a percentage of the gross selling price of the products invented by McSherry. *See* McSherry Aff., Ex. F.

During his employment with Die Cast, McSherry invented a plastic wall anchor, referred to by the parties as the "C6 anchor." The C6 anchor was disclosed by McSherry to Die Cast, and specifically to the defendant Louis N. Giannuzzi, an employee of Die Cast who had worked with McSherry. *See McSherry, supra*, 227 U.S. P.Q. at 870. In September 1977, the relationship between McSherry and Die Cast was terminated, and McSherry was allegedly informed by Die Cast that it did not intend to market the C6 or obtain a patent thereon. *See Mechanical Plastics, supra*, 119 A.D.2d at 641, 501 N.Y.S.2d at 87. Thereafter, Giannuzzi applied for patents in his own name as sole inventor of a wall anchor that has been designated the "Polytoggle." Patents claiming this device were issued to Giannuzzi as sole inventor in 1980 and 1981.[3] *See supra* note 1. These patents have been licensed to Rawlplug.

In 1979, Die Cast and Rawlplug began to manufacture and market the Polytoggle. In 1981, McSherry, believing that the Polytoggle anchor was substantially the same as his C6 anchor, precipitated an interference proceeding in the Patent and Trademark Office between his C6 anchor patent

---

1. The dates on which Giannuzzi filed for and received his patents are undisputed. The application for the '781 patent was filed on April 18, 1978, and the patent issued on April 15, 1980. On May 16, 1979, a second patent application was filed as a division of the first, and ultimately issued as the '324 patent on June 23, 1981. The patents are attached as exhibits J and K to the Affidavit of Thomas W. McSherry.

2. The defendants also request sanctions against the plaintiff pursuant to Fed.R.Civ.P. 11. In light of the Court's denial of the defendants'

motion for summary judgment, this request is denied.

3. Both the '781 and '324 patents describe and claim variations of a plastic wall anchor. Although it is not clear which claims describe the "Polytoggle," the differences between the patents are not relevant to this motion, and the term "Polytoggle" will be treated herein as encompassing the inventions described and claimed in both patents.

application[4] and the '324 patent. *See* McSherry Aff. at ¶¶ 7–8. In this interference proceeding, McSherry asserted that he, and not Giannuzzi, was the sole first inventor of the anchor, and that the patent should name him as sole inventor. *See Mechanical Plastics, supra,* 119 A.D.2d at 642, 501 N.Y.S.2d at 87; McSherry Aff. at ¶ 7 & Ex. L. The Board of Patent Appeals and Interferences (the "Board") found in favor of Giannuzzi, and awarded him priority of invention. *McSherry, supra,* 227 U.S.P.Q. at 874.[5] This decision was affirmed by the Court of Appeals for the Federal Circuit.

McSherry then filed this action pursuant to 35 U.S.C. § 256 (1982)[6] to have his name added to Giannuzzi's patents as a joint inventor of the Polytoggle. The defendants moved to dismiss the complaint on the ground that it failed to state a cause of action or alternatively for summary judgment on the ground that the action was barred by the doctrine of collateral estoppel. The motion to dismiss was granted by order dated November 9, 1987, and the plaintiff was directed to file an amended complaint. The amended complaint was filed on November 12, 1987.[7]

## DISCUSSION

### A. *Res Judicata*

The defendants first assert that the prior decision of the Board of Patent Appeals and Interferences in *McSherry v. Giannuzzi, supra,* bars the plaintiff from bringing this action. Specifically, the defendants argue that because McSherry did not raise the joint inventorship issue during the interference proceeding, he is precluded by the doctrine of res judicata from raising this issue now.[8]

---

4. McSherry's patent application for the C6 anchor was filed on August 6, 1981, and issued as United States Patent No. 4,704,057 on November 3, 1987.

5. Giannuzzi argued in the interference proceeding that the claims of the '324 patent contained four limitations that were not met by McSherry's C6 anchor. The Board determined that three of these limitations distinguished Giannuzzi's device from McSherry's device, and awarded Giannuzzi priority on that basis. The Board, however, specifically found that one limitation, the "truss" feature, was common to both devices.

The plaintiff argues in his motion for summary judgment that this finding by the Board establishes that he and Giannuzzi are joint inventors of the Polytoggle, and that the doctrine of collateral estoppel bars the defendants from relitigating this issue.

6. Section 256 provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

The Federal Circuit has recently held that this Section creates a cause of action for the correction of a patent in favor of a coinventor whose name has been omitted from the patent. *See MCV, Inc. v. King–Seely Thermos Co.,* 10 U.S.P. Q.2d 1287, 1289–90 (Fed.Cir.1989).

7. The Court notified the parties by order dated December 23, 1987 that the defendants' renewed motion to dismiss would be treated as a motion for summary judgment.

8. Although defendants assert that the principles of collateral estoppel are applicable to their motion, collateral estoppel, or issue preclusion, "operates only as to issues actually litigated." *Young Engineers, Inc. v. ITC,* 721 F.2d 1305, 1314 (Fed.Cir.1983). Here, the issue of joint inventorship was not actually litigated in the prior suit, and thus principles of collateral estoppel are not applicable.

It follows that to the extent that plaintiff's motion for summary judgment is predicated on principles of collateral estoppel, it must be denied because the issues of joint inventorship, lack of deceptive intention, and error in omitting McSherry's name from Giannuzzi's patents, which are the three elements of a claim under Section 256, were never actually adjudicated in the interference proceeding. Indeed, as discussed *infra,* absent a motion by McSherry to amend his application, which would have precluded McSherry's sole inventorship claim, the Board could not have adjudicated the joint inventorship issue. The plaintiff's reliance on the finding of the Board that the C6 anchor and the

■ "Under the doctrine of *res judicata,* or claim preclusion, a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised in that action.'* " *Fay v. South Colonie Central School District,* 802 F.2d 21, 28 (2d Cir.1986) (quoting *Federated Department Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)) (emphasis added); *see Young Engineers, Inc. v. ITC,* 721 F.2d 1305, 1314 (Fed.Cir.1983). It is therefore essential to a res judicata bar that the litigant against whom it is asserted would have faced no procedural barriers to the assertion of the claim in the earlier action. *See Young Engineers, supra,* 721 F.2d at 1314–15.

> Thus,
>
> [t]he general rule ... is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

Polytoggle have one feature in common is not sufficient to demonstrate that he is entitled to summary judgment on the joint inventorship issue.

Plaintiff's assertion that somehow principles of judicial estoppel entitle him to summary judgment is equally unpersuasive. Plaintiff has met none of the requirements of that doctrine, *i.e.,* (1) that Giannuzzi has taken an inconsistent position in a prior adversary proceeding; (2) that Giannuzzi received some benefit from the previously taken inconsistent position; and (3) that Giannuzzi took the inconsistent position in order to mislead the Court or to obtain an unfair advantage as against McSherry. *See infra* pp. 242–43.

9. An interference proceeding is instituted pursuant to 35 U.S.C. § 135 (1982 & Supp. V 1987) for the purpose of determining which of two or more parties was the first inventor of a patenta-

*Id.* at 1315 (quoting *Restatement (Second) of Judgments* § 26(c) (1982)).

■ This case falls squarely within this exception. Each party to an interference proceeding[9] has previously sworn to the inventorship of the claimed invention,[10] and cannot advance an inconsistent position during the interference proceeding. *See Kilbey v. Thiele,* 199 U.S.P.Q. 290 (Bd. of Pat. Int.1978). Therefore, unlike the federal rules of civil procedure, the rules governing interference proceedings do not permit a party to plead alternative theories of recovery. Since McSherry could only have claimed to be a joint inventor at the cost of forgoing his claim to be the sole inventor, he should not be barred from asserting that claim here.

The defendants' argument that McSherry could have raised the joint inventorship issue before the Board by making a motion pursuant to 37 C.F.R. § 1.231(a)(c)[11] to amend his application to add Giannuzzi as a joint inventor does not alter this conclusion. Indeed, had such a motion been made and granted, McSherry would still have been precluded from arguing that he was the sole inventor of the Polytoggle.

■ The Court rejects McSherry's argument that res judicata is inapplicable because the Board lacked the power to afford the relief sought here, *i.e.,* to declare him a joint inventor and amend the inventorship of the '324 patent. *See Fay, supra,* 802 F.2d at 29. Although it is true that the

ble invention. An interference may be declared between two or more pending patent applications naming different inventors, or between one or more pending applications and one or more unexpired patents naming different inventors. *See* 37 C.F.R. § 1.201(a), (b) (current version at 37 C.F.R. § 1.601(i)); *Shattuck v. Hoegl,* 523 F.2d 509, 511 n. 3 (2d Cir.1975).

10. As part of a patent application, an inventor must file an oath or declaration identifying each inventor, and stating whether the inventor is a sole or joint inventor of the invention claimed. 37 C.F.R. § 1.63(a)(3)–(4).

11. The current version of this rule is at 37 C.F.R. § 1.634. Section 1.231(a)(5) provided that during an interference proceeding, a party may move "to amend an involved application by adding or removing the names of one or more inventors."

Board lacked the power to amend Giannuzzi's patent because the Commissioner can only amend the inventorship of a patent "on application of all the parties and assignees," 35 U.S.C. § 256 (1982), which, in view of Giannuzzi's claim to be the sole inventor, was not possible here, *see Dee v. Aukerman*, 625 F.Supp. 1427, 1430 (S.D. Ohio 1986), nevertheless the Board could have granted McSherry the equivalent relief: an award of priority to an application naming Giannuzzi and himself as joint inventors.[12] Therefore, McSherry is incorrect when he asserts that the Board did not have the power to declare him a joint inventor of the Polytoggle, although, as discussed *supra*, had McSherry claimed to be a joint inventor in the interference proceeding he would have been precluded from asserting his sole inventorship claim.

**B. *Judicial Estoppel***

The defendants next argue that the position taken by McSherry in other proceedings precludes him from asserting in this action that the omission of his name from Giannuzzi's patents was the result of an error, which is an essential element of his claim under Section 256.[13] *See Aukerman, supra*, 625 F.Supp. at 1430. In essence, the defendants' argument rests upon the fact that McSherry has previously alleged that the defendants engaged in various acts of fraud and bad faith with respect to patenting the Polytoggle.

■ "The doctrine of judicial estoppel allows a court to preclude a party from asserting a position contrary to one upon which it prevailed in a prior proceeding." *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1447 (S.D.N.Y.1986) (footnote omitted). However, the party against whom this doctrine is invoked must have been successful in the prior proceeding, or at least have received some benefit from the previously taken inconsistent position. *See Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1579 (Fed.Cir.1984); *Long Island Lighting Co., supra*, 646 F.Supp. at 1447; *see also* Wright & Miller, *Federal Practice and Procedure* § 1283, at 376–77 (1969) (estoppel appropriate where litigant acting in bad faith or party's procedural position would lead to inequitable result). Moreover, in the Federal Circuit, reliance and prejudice are essential before an adversary may be precluded from asserting an inconsistent position. *See Jackson Jordan, supra*, 747 F.2d at 1580.

■ Therefore, the defendants cannot rely on the doctrine of judicial estoppel unless at the very least (1) McSherry has

---

**12.** Contrary to the understanding of the parties, expressed in the briefs and at oral argument, adding Giannuzzi's name by amendment to McSherry's application would not have deprived the Board of jurisdiction and terminated the interference proceeding.

In *Linkow v. Linkow and Edelman*, 517 F.2d 1370 (C.C.P.A.1975), the Court of Customs and Patent Appeals, the predecessor to the Federal Circuit, implicitly recognized the power of the Board of Patent Interferences to determine the inventorship of the subject matter in issue in an interference proceeding where the issue of priority turns on the fact of joint inventorship. In *Linkow*, Edelman claimed he jointly conceived with Linkow an implant device for supporting an artificial tooth. Linkow filed a patent application naming himself as sole inventor. Edelman then filed an application for the same device, naming himself and Linkow as joint inventors, and an interference was instituted. The Court reversed an award of priority to Edelman and Linkow (the junior party), holding that the junior party had not sufficiently proved joint conception.

If McSherry had moved during the interference proceeding to add Giannuzzi's name as joint inventor to his own application, the sole question in the interference proceeding would have been "one of who conceived the invention, and the junior party [would have had] the burden of proving by a preponderance of the evidence that the invention was jointly conceived." *Linkow, supra*, 517 F.2d at 1373. The posture of this case would have been the same as in *Linkow*, and the Board would have determined who conceived the invention, which in turn would have settled the issue of priority.

**13.** Indeed, the Court initially dismissed the complaint because McSherry failed to allege that his name was omitted from the patents through error.

The amended complaint alleges:

6A. Giannuzzi, through an error and without deceptive intent on his part, did not name McSherry as a joint inventor in the aforesaid patents.

6B. The error occurred without any deceptive intent by McSherry.

taken an inconsistent position in a prior adversary proceeding; (2) McSherry received some benefit from the previously taken inconsistent position; and (3) McSherry took the inconsistent position in order to mislead the Court or to obtain an unfair advantage as against the defendants.[14] *See id.* at 1578–80; *United States v. Starrett City Assocs.*, 605 F.Supp. 262, 264 (E.D.N.Y.1985). These requirements have not been met in this case.

Although there can be little question that the position taken by McSherry in the state court action is inconsistent with his assertions in this case,[15] the same is not true of the position taken by McSherry in the interference proceeding. In the interference proceeding, McSherry claimed only that Giannuzzi committed a fraud on the Patent and Trademark Office by not disclosing the C6 anchor as prior art during the prosecution of the '324 patent application, not that he fraudulently concealed McSherry's participation in the creation of the invention, which was the claim made in the state court proceeding. Thus, McSherry's allegations during the interference proceeding are not necessarily inconsistent with the assertion that McSherry's name was omitted from the patent, and Giannuzzi's name listed therein as sole inventor, as the result of an error.

With respect to the second requirement, McSherry's allegations of fraud and bad faith have not met with success and have therefore gained him no benefit. In the related state court proceeding, McSherry asserted a cause of action based on fraud alleging that Die Cast, Rawlplug and Giannuzzi falsely stated to him that they did not intend to market the C6 anchor, and that the defendants fraudulently applied for a patent. The first aspect of this claim was dismissed because McSherry failed to allege in his complaint that he relied on the alleged misrepresentations. The second aspect was dismissed because it was not interposed within the time prescribed by the statute of limitations. *See Mechanical Plastics, supra,* 119 A.D.2d at 643, 501 N.Y.S.2d at 88.

---

**14.** The defendants also assert that in a recent deposition, taken in connection with another federal action, McSherry testified that he is not a coinventor of the subject matter of the Giannuzzi patents. *See* Defendants' Supplemental Memorandum in Support of Motion for Summary Judgment. The other federal suit is an infringement action brought by the assignee of McSherry's C6 anchor patent against Rawlplug. The plaintiff disputes that this testimony is inconsistent with his joint inventorship claim. McSherry argues that the defendants' assertion of inconsistency is misleading because the testimony relied on by the defendants refers to his own C6 anchor patent, and not to the Giannuzzi patents at issue in this action. *See* McSherry Aff. at ¶ 18. Furthermore, McSherry asserts that the illustrations of the Polytoggle shown to him at the deposition (figures 21 and 22 of his C6 anchor patent) were mere additional embodiments of the claims for the C6 anchor, and his responses with respect to the C6 anchor patent referred to the claims rather than the illustrations contained therein. Thus, McSherry asserts that he testified only that he was the sole inventor of the claims in his C6 anchor patent. The Court need not determine whether McSherry's deposition testimony in the infringement action is inconsistent with his joint inventorship claim because it is clear that McSherry has not gained any benefit or unfair advantage by taking an allegedly inconsistent position in the infringement action.

**15.** The defendants in the related state court action, which apparently is still pending, are, inter alia, Rawlplug, Die Cast, and Giannuzzi. The complaint therein alleges:

    33. Defendants further represented to plaintiff McSherry that ... the defendants did not intend to market the [C6 anchor] or any functional equivalent thereof, nor to assist McSherry or any one else in obtaining a patent thereon.

    34. Defendants' aforesaid representations to plaintiff McSherry were false and known to each of them to be false at the time they were made....

    35. Defendants' true intent, in or about September–November 1977 and afterwards, was to market the [C6 anchor] disclosed to them by plaintiff McSherry or a functional equivalent thereof, and secretly to apply for a patent thereon in the name of the defendant Giannuzzi.

Defendants' Supplemental Memorandum in Support of their Motion to Dismiss (Defs' Supp. Mem), Ex. 1. The defendants also point to statements to the same effect made by McSherry in an affidavit filed in the state court in connection with an appeal, *see* Defs' Supp.Mem. at 11, Ex. 2. These statements conflict with McSherry's position in this case that his name was omitted from the Giannuzzi patents as the result of an error.

Similarly, McSherry's claim that Giannuzzi committed a fraud on the Patent and Trademark Office by not disclosing the C6 anchor as prior art during the prosecution of the '324 patent application was rejected by the Board in *McSherry v. Giannuzzi, supra,* 227 U.S.P.Q. at 873–74. It is clear, therefore, that McSherry has not received any benefit from his allegations of fraud and bad faith in the prior proceedings.

Lastly, the third requirement is also not satisfied. The defendants have failed to establish either that the Court has been misled, or that they have been prejudiced by McSherry's inconsistent position. Indeed, the defendants have successfully contested every allegation of fraud and bad faith. Therefore, the defendants have failed to establish the elements of judicial estoppel, and McSherry's prior inconsistent position cannot serve to preclude his allegation of error in this action.[16]

## CERTIFICATION

The defendants have requested that the order denying their motion for summary judgment on the ground of res judicata be certified for interlocutory appeal to the Court of Appeals for the Federal Circuit[17] pursuant to 28 U.S.C. § 1292(b) (1982 & Supp. V 1987). Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken....

There are three requirements for certification under Section 1292(b): that the order involve (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation.

The order declining to bar McSherry's claim that he is a joint inventor of the Polytoggle is appropriate for certification under Section 1292(b). With respect to the third requirement, reversal of this order would dispose of this case. Moreover, this controlling issue of law, *i.e.,* the impact of a claim of sole inventorship in an interference proceeding upon a subsequent claim of joint invention, is one of first impression,

16. In two letters dated May 11, 1989 and June 27, 1989, the defendants assert estoppel based not on a prior inconsistent position, but on McSherry's alleged delay in raising the issue of joint inventorship. In support of their new estoppel argument, the defendants rely on the recent case of *MCV, Inc. v. King–Seely Thermos Co.,* 10 U.S.P.Q.2d 1287 (Fed.Cir.1989).

The *MCV* case is legally and factually inapposite. In *MCV,* the alleged coinventor, one Thomas Simon, knowingly acquiesced in the omission of his name as coinventor from the patent application for four years. Indeed, not only did Simon fail to challenge the patent application in this four-year period, his conduct affirmatively induced the belief that he had abandoned his coinventorship claim. Such conduct justifies estoppel.

However, that situation is different from this case, where the plaintiff was not inactive but claimed he was the sole inventor of the Polytoggle. Moreover, only after he lost on this issue, after protracted litigation, was it pragmatically possible to assert his claim of coinventorship. The Court cannot accept defendants' argument that plaintiff should be equitably estopped be-

cause it was theoretically possible to claim joint inventorship in a civil suit while simultaneously claiming sole inventorship in the interference proceeding. If plaintiff had done so, Giannuzzi would surely have argued in the interference proceeding that the joint inventorship claim constituted an admission that plaintiff was not the sole inventor of the Polytoggle.

Furthermore, the Court is not persuaded, as a matter of law, that defendants have relied to their detriment on plaintiff's failure to claim joint inventorship sooner, especially since plaintiff's claim of sole inventorship surely put the defendants on notice that their patent rights were disputed. At the very least there are material issues of fact with respect to this issue that preclude summary judgment.

17. The Court of Appeals for the Federal Circuit has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(c)(1) (1982 & Supp. V 1987) because this action arises under an act of Congress relating to patents. *See* 28 U.S.C. §§ 1295(a)(1), 1338(a) (1982 & Supp. V 1987); *MCV, supra,* 10 U.S.P.Q.2d at 1289–90.

and its determination by the Federal Circuit would contribute to the early termination of similar cases arising under Section 256, and resolve an open issue as to which there is certainly a substantial ground for difference of opinion. *See Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir.1961); *Red Bull Associates v. Best Western Int'l*, 686 F.Supp. 447, 453 (S.D.N.Y.1988).

The Court therefore certifies this order for interlocutory appeal to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1292(b) (1982 & Supp. V 1987).

## CONCLUSION

The defendants' motion for summary judgment is denied. The order denying the defendants' motion for summary judgment on the ground of res judicata is certified for appeal to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1292(b). The plaintiff's motion for summary judgment is denied.

It is SO ORDERED.