Peter A. TARTAGLIONE and Valerie Tartaglione, Plaintiffs,

v.

SHAW'S EXPRESS, INC. and Putnam Transfer & Storage Co., Defendants.

PUTNAM TRANSFER & STORAGE CO., Third–Party Plaintiff,

v.

Vincent KISH and Mark McFane, Third–Party Defendants.

No. 89 Civ. 5671 (KMW).

United States District Court, S.D. New York.

April 14, 1992.

Norma Giffords, Randazzo & Giffords, Great Neck, N.Y., for plaintiffs.

William M. Boyle, Costello & Shea, New York City, Bruce A. Bendix, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., for defendants.

## MEMORANDUM OPINION
## AND ORDER

KIMBA M. WOOD, District Judge.

Defendant Shaw's Express, Inc. ("Defendant Shaw") and Defendant Putnam Transfer & Storage Company ("Defendant Putnam") move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants summary judgment in favor of Defendants Shaw and Putnam.

## BACKGROUND

On December 8, 1987, Plaintiff Peter Tartaglione was operating a motor vehicle on the Cross–Bronx Expressway in the Bronx, New York, when he collided with a truck owned by Vincent Kish and operated by Mark McFane. Plaintiff Peter Tartaglione suffered personal injuries as a result of the collision.

Plaintiffs Peter Tartaglione, the driver, and Valerie Tartaglione, the owner of the vehicle involved in the collision, sued Kish and McFane in State Supreme Court on January 25, 1988, seeking damages for personal injuries resulting from the collision. On September 9, 1988, the court entered an order granting Plaintiffs summary judgment against McFane and Kish and permitting Plaintiffs to take an inquest in order to assess damages. Apparently, both McFane and Kish were uninsured and no inquest was taken. (Def. Putnam's Memorandum of Law in Support of Summary Judgment [hereinafter "Def. Putnam's Mem."], at 3).

The truck involved in the accident was transporting goods in interstate commerce. Defendant Shaw is the Interstate Commerce Commission ("ICC") licensed property broker that arranged for the shipment of goods. Defendant Putnam had leased the truck for the purpose of transporting goods in interstate commerce but it had terminated the lease two months prior to the accident.

On July 18, 1989, Plaintiffs filed the present action against Defendants Shaw and Putnam, alleging that the motor vehicle collision that led to Plaintiff Peter Tartaglione's personal injuries resulted from the negligence of these two Defendants. Plaintiffs allege that Defendant Shaw is responsible for Plaintiffs' injuries because, in failing to comply with ICC regulations mandating that a broker place goods into the stream of interstate commerce only with a certified motor carrier, Defendant Shaw breached its duties to the general public under the Interstate Commerce Act ("ICA"). Plaintiffs further allege that Defendant Putnam is liable for the negligent acts of Kish and McFane because of its failure to terminate properly its leases with Kish, the owner of the truck involved in the accident; as a result, Plaintiffs allege that McFane, the driver of the vehicle, was the "statutory employee" of Defendant Putnam at the time of the accident. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [hereinafter "Pls.' Mem."], at 1). Plaintiffs allege that, as the statutory employer of McFane, Defendant Putnam should be held liable for McFane's negligent acts. (Pls.' Mem. at 2). Both Defendants Shaw and Putnam move for summary judgment. For the reasons stated below, the Court grants Defendants' motions for summary judgment.

## DISCUSSION

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). When considering a motion for summary judgment, a court must resolve "all ambiguities and inferences to be drawn from the underlying facts ... in favor of the party opposing the motion...." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citations omitted).

The moving party bears the initial burden of demonstrating that no factual issue exists and that it is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). Furthermore, motions for summary judgment must be denied "[i]f reasonable minds could differ as to the import of the evidence" and " 'if ... there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn.' " *Brady*, 863 F.2d at 211 (citations omitted). On the other hand, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

## I. Defendant Shaw's Motion for Summary Judgment

■ Defendant Shaw moves for summary judgment, claiming that the relation between Defendant Shaw and McFane and Kish is that of independent contractors, not of agents. (Defendant Shaw's Memorandum of Law in Support of Summary Judgment [hereinafter "Def. Shaw's Mem."] at 2–5). Defendant Shaw argues that it did not exercise sufficient control over the details of McFane and Kish's trip to create an agency relationship. For example, Defendant Shaw states that it controlled neither the route chosen by Kish and McFane nor the gas and oil they used. (Def. Shaw's Mem. at 2). Defendant Shaw's only interest was that the cargo be delivered to its

ultimate destination. (Def. Shaw's Mem. at 2). Plaintiffs respond that Defendant Shaw did control the location where the goods were picked up and delivered. (Norma Gifford's Affidavit, ¶ 28).

Under New York law, "[i]t is well settled that an agency relationship 'results from the manifestation of consent by one person to another that the other act on his behalf and subject to his control, and consent by the other so to act.'" *E.B.A. Wholesale v. S.B. Mechanical Corp.*, 127 A.D.2d 737, 512 N.Y.S.2d 130, 131 (1987) (citations omitted). "In contrast, '[a]n independent contractor is a person who contracts with another to do something for him but who is not controlled by the other or subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'" *Id.* (citations omitted). In other words, "[a]n independent contractor is one who, in exercising an independent employment, ... is not subject to the control of the [person with whom he has contracted], except as to the result of his work." *Spiro v. Pence*, 149 Misc.2d 613, 566 N.Y.S.2d 1010, 1012 (1991) (citations omitted).

Upon finding that the "record [wa]s devoid of evidence" that one party "retained or exerted any control over the manner in which [the work] was conducted by [the other party]," a New York court refused to find the existence of an agency rather than an independent contractor relationship. *Mechanical Plastics Corp. v. Rawlplug Co.*, 119 A.D.2d 641, 501 N.Y.S.2d 85 (1986). Furthermore, although there is no New York law directly on point, a Florida court found that the relation between a transportation broker and the owner and driver of a truck was that of independent contractors and not agents because the owner and driver had a choice of routes and furnished their own gas and oil. *See W.D. King v. Young*, 107 So.2d 751, 753 (Fla.App.1958).

Here, Plaintiffs have not presented sufficient evidence that Defendant Shaw exercised control over the manner in which Kish and McFane transported the cargo to establish an agency relation. The fact that Defendant Shaw controlled the location where the cargo was picked up and delivered does not establish an agency relationship because such control involves only the result of the work and not the manner in which it is undertaken. The Court finds that, in transporting cargo, McFane and Kish acted as independent contractors and not as agents of Defendant Shaw.

■ Both Plaintiffs and Defendant Putnam argue that Defendant Shaw breached its duty under the ICA to arrange for the transportation of property by a motor carrier authorized by the ICC. Although Section 10924 of the ICA requires a property broker to provide for transportation only by a motor carrier holding a certificate or permit issued by the ICC, the ICA does not create a private cause of action based on violations of its provisions. Moreover, Section 10924 of the ICA does not impose liability on a property broker for the injuries sustained to third parties as a result of the alleged negligent acts of an unauthorized motor carrier. 49 U.S.C. § 10924.

■ Although none of the parties make the argument, proof of a violation of the ICA could provide prima facie evidence of negligence on the part of the party violating the act. "In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself.'" *Chen v. U.S.*, 854 F.2d 622, 627 (2d Cir.1988), *quoting Martin v. Herzog*, 228 N.Y. 164, 168, 126 N.E. 814 (1920). However, even if the Court found prima facie evidence of negligence on the part of Defendant Shaw, such evidence would not hold Defendant Shaw liable for the negligence of a third party acting as an independent contractor.

Finally, Plaintiffs argue that there is a material issue of fact precluding summary judgment because it is not yet clear whether Defendant Shaw was "negligent in the performance of its duties" as a property broker under the ICA. However, this fact is not material to the disposition of this action because, as stated above, any finding regarding Defendant Shaw's negligence would not lead this Court to find Defendant Shaw liable for the negligence

of a third party independent contractor. Therefore, the Court grants Defendant Shaw's motion for summary judgment.

## II. *Defendant Putnam's Motion for Summary Judgment*

■ Defendant Putnam also moves for summary judgment, claiming that it did not own, operate, lease or control the truck at the time of the accident. (Def. Putnam's Mem. at 19–23). In the alternative, Defendant Putnam argues that, even if it did not terminate its lease with Kish before the accident, it cannot be held liable for the negligent acts of McFane because the delivery that resulted in the collision was conducted without the permission, authorization, or knowledge of Putnam. (Def. Putnam's Mem. at 24–27). Plaintiffs and Defendant Shaw argue that Defendant Putnam did not properly terminate its lease with Kish prior to the accident. (Pls.' Mem. at 3–5). Plaintiffs further claim that, on the date of the accident, the truck contained Defendant Putnam's ICC authorization decals. (Peter Tartaglione Deposition, Correction Sheet, p. 134, line 16).

On February 13, 1987, Defendant Putnam and Kish entered a lease providing for the transportation of cargo in interstate commerce. Under the terms of the lease, Defendant Putnam is the carrier and it leases equipment from Kish, the owner, in order to transport property for hire. Defendant Putnam claims that it terminated the lease on October 2, 1987, approximately two months prior to the accident. Plaintiff and Defendant Shaw argue that the lease was not terminated properly.

The lease provides for termination by either party "by mailing or delivering to the other party ... two copies of a written notice of termination which shall be effective either upon receipt of the notice of termination from the other party or at such later date as may be specified in that notice. The party receiving notice of termination shall receipt the copy of such notice and return such receipted copy to the other party." February 13, 1987 Equipment Lease Agreement Between Owner and Carrier [hereinafter "Lease"], ¶ 3. On October 2, 1987, Kish called James Bell, Vice President of Defendant Putnam, requesting that the lease be terminated (Def. Putnam's Mem. at 6), and Bell sent Kish a notice of termination by certified mail. (Def. Putnam's Mem. at 6; Def. Putnam's Exhibit H). Mr. Kish signed the return receipt on the notice of termination on October 3, 1987. (Def. Putnam's Mem. at 6).

According to regulations promulgated pursuant to the ICA, leases providing for the transportation of cargo in interstate commerce must "clearly specify which party is responsible for removing identification devices from the equipment upon the termination of the lease and when and how these devices ... will be returned to the carrier." 49 C.F.R. § 1057.12(e) (1987). The Lease provides that the "[w]hen possession of equipment is returned by carrier [Defendant Putnam] to owner [Kish], owner shall furnish a ... receipt to carrier and at the same time remove and return to carrier all identification devices and other property furnished by carrier to owner." Lease, ¶ 5.

Eileen Jenkins, Defendant Putnam's Office Manager, testified that on October 8, 1987, almost two months prior to the accident, McFane, acting on behalf of Kish, returned to Defendant Putnam portions of the ICC authorization decals. (Eileen Jenkins' Deposition at 42–44). Furthermore, pursuant to the lease, Kish was required to place $300.00 in escrow for "permits or any current and/or past due balance incurred for the duration of th[e] lease," to be returned upon termination of the lease. Lease, ¶ 12. On November 9, 1987, Defendant Putnam returned to Kish $300.00 from the escrow account. (Def. Putnam's Mem. at 13; Defendant Putnam's Exhibit M, p. 50, line 10 through p. 51, line 7). Additionally, the Lease contains a receipt signed by both the carrier and the owner, acknowledging receipt of the equipment from Defendant Putnam in acceptable condition. Lease, at 2. This receipt is required under ¶ 5 of the Lease as a condition of termination. Lease, ¶ 5.

On the other hand, the invoice of the shipment made on December 7, 1987 contains Defendant Putnam's ICC authorization number. (Plaintiffs' Exhibit B). Plaintiff Peter Tartaglione stated in a cor-

rection sheet to his deposition testimony that he "saw [on the truck] a sign with a red background and block letters," although he did "not recall the words which appeared on the sign." (Peter Tartaglione Deposition, Correction Sheet, p. 134, line 16). Moreover, no Putnam employee inspected the truck upon termination of the lease to determine whether the decals had been properly removed by Kish and McFane. (Pls.' Mem. at 4–5; Norma Giffords Affidavit, ¶ 8). However, such an inspection is not required of Defendant Putnam under the Lease, which requires the owner, Kish, to return the decals and other authorizations. Lease, ¶ 5.

Upon review of the evidence presented on this motion for summary judgment, the Court finds that the Lease was terminated properly and that the appearance of Defendant Putnam's ICC authorization on the December 7, 1987 invoice was due to the fault of Kish and not of Defendant Putnam. Furthermore, even if Kish failed to remove the decals upon termination of the lease (the Court makes no such finding in light of the lack of reliable evidence on this point), Defendant Putnam is not liable for the collision because the lease places the responsibility for removing the decals on Kish and not on Defendant Putnam. The Court also finds that there is no question of material fact precluding a grant of summary judgment in Defendant Putnam's favor. Finally, in light of the Court's finding that the Lease was terminated properly, the Court need not consider Defendant Putnam's alternative argument that Kish did not have Defendant Putnam's permission to use Defendant Putnam's ICC authorization for the delivery that led to the accident.

### CONCLUSION

For the reasons stated above, the Court grants Defendants' motions for summary judgment. The clerk is ordered to dismiss the complaint.

SO ORDERED.