United States Court of Appeals
For the First Circuit

No. 98-2074

JEAN C. GRAHAM,

Plaintiff, Appellant,

v.

MALONE FREIGHT LINES, INC., ET AL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Chief Judge,
Campbell, Senior Circuit Judge,
and Boudin, Circuit Judge.

Jonathan J. Margolis, with whom Jennifer L. Stuart, and
Kushner, Sanders & Krone, LLP were on brief for appellant.
William L. Boesch, with whom Peter L. Puciloski and Sugarman,
Rogers, Barshak & Cohen, P.C. were on brief for appellees, Malone
Freight Lines, Inc., Crst International, Inc. and CRST, Inc.
Thomas F. X. Foley, with whom Fisher Fallon, William A. 
Sheridan and Flynn, Sheridan & Tabb were on brief for appellee,
East Coast Transport, Inc.
Robert Digges, Jr., ATA Litigation Center, Susan S. 
Riedel, Erik Lund, George A. Berman and Posternak, Blankstein &
Lund, were on brief for American Trucking Associations, Inc.,
Amicus Curiae.

JULY 21, 1999

CAMPBELL, Senior Circuit Judge. On May 21, 1993, a
tractor-trailer driven by Jerome Washington and owned by Washington
and Malachi Sabree collided with an automobile driven by Jean C.
Graham in Wellesley, Massachusetts. In this diversity action in
the district court, Graham brought negligence claims against (1)
Washington, (2) Sabree, (3) Malone Freight Lines, Inc. ("Malone"),
which had leased the tractor-trailer from Washington and had
provided the registration materials necessary to allow Washington
to operate the tractor-trailer interstate, and (4) East Coast
Transport, Inc. ("ECT"), the broker that had arranged for
Washington to carry the load of cucumbers he was hauling at the
time of the accident. After Washington and Sabree defaulted, the
district court entered judgment against them and, after reviewing
documentary evidence of Graham's injuries, awarded Graham $111,300
in damages, of which $40,000 was for pain and suffering. The
district court granted summary judgment in favor of Malone and ECT
on all claims. Graham appeals from the grant of summary judgment
in favor of Malone and ECT. She also contends that she was
entitled to a jury trial on the amount of damages to be awarded in
connection with the default judgments and, further, that the award
for pain and suffering was unreasonably low. We affirm the
judgment of the district court.

I.
The undisputed facts are well described in the district
court's comprehensive opinion and need not be repeated in detail. 
See Graham v. Malone Freight Lines, Inc., et al., 948 F. Supp. 1124
(D. Mass. 1996). We recite, in the light most favorable to Graham,
only those facts most pertinent to our discussion of the issues on
appeal.
Malone, based in Birmingham, Alabama, is an interstate
motor carrier engaged in the business of transporting freight via
truck under the jurisdiction granted formerly by the Interstate
Commerce Commission. As a condition of its operating authority,
Malone was required to maintain insurance for its vehicles. See 49
U.S.C. 10927(a)(1). On April 1, 1991, the ICC approved Malone's
application to self-insure for bodily injury and property damage
liability up to $1,000,000. 
Washington, who was based in Florida, owned a trailer,
and was making periodic payments toward the purchase of a tractor
owned by Sabree. On April 14, 1993, Malone and Washington entered
into a lease in which Washington promised to lease the tractor-
trailer to Malone and act as driver, and Malone agreed to lend its
authorizations for interstate commerce to Washington and provide
hauls for him. Under the terms of the lease, any breach of the
lease covenants and promises gave either party an immediate right
to cancel the lease. The lease provided that notice of
cancellation could be by telephone or in writing. If notice of
cancellation was in writing, the lease provided that written notice
was "deemed to have been fully given . . . on the second day after
mailing . . . by first class mail, registered or certified, postage
prepaid, and properly addressed" to the relevant party.
Washington and Malone had entered into an earlier lease
in October 1992, which was canceled by Malone on December 17, 1992
because Washington hauled an unauthorized load of freight. In
connection with the execution of this earlier lease, Washington had
presented to Malone a transcript, dated August 5, 1992, of his
driving record from his home state, Florida. The transcript did
not state that there were any restrictions in effect on
Washington's operation of the tractor-trailer. On August 6, 1992,
the state of Florida issued a conditional driver's license to
Washington, valid only as to hauls within Florida. The record is
unclear as to the reason for the limitation and as to whether it
remained in effect on the accident date, May 21, 1993. The
restriction was noted on the face of Washington's driver's license
in the form of a code notation -- "AB2." The driver's license
itself did not explain what "AB2" meant. Explanations for various
such codes appear, however, at the bottom of the August 5
transcript. These indicated that "AB2" meant that a commercial
driver's license is limited to intrastate hauls. The Florida
transcript further stated: "SOME LICENSES ISSUED BY THE STATE OF
FLORIDA ARE VALID IN FLORIDA ONLY. THIS RESULTS FROM APPLICANT
RETAINING A VALID LICENSE FROM ANOTHER JURISDICTION." When Malone
and Washington entered the lease on April 14, 1993, Malone relied
upon the August 5, 1992, transcript of Washington's Florida driving
record which, as already indicated, did not itself note that
Washington's license was subject to the "AB2" or other limitation. 
When Washington left Malone's offices on April 15, 1993, 
he had with him various vehicle identification materials provided
by Malone, including door placards for the tractor in Malone's
name, decals for the tractor-trailer with Malone's ICC number, a
"cab card" that indicated Washington had Malone's permission to
operate under its ICC authority, decals with Malone-assigned
numbers, and forty-eight state decals indicating that applicable
state taxes had been paid. Malone registered the tractor-trailer
in Illinois. On April 15, 1993, Malone obtained a 45-day temporary
permit for the tractor-trailer, which was valid until May 30, 1993.
Malone also transferred an Illinois license plate, valid for one
year, to Washington's tractor-trailer. 
Malone never arranged for any hauls for Washington under
the lease. Malone asserts that Washington failed to contact a
Malone dispatcher, as he had agreed to do under the lease. 
Washington contends that he was in contact with a Malone
dispatcher. In any event, Malone believed that Washington had
breached the lease. Consequently, on April 27, 1993, Malone sent,
postage prepaid, a certified letter addressed to Washington's
correct home address canceling the lease and requesting the
immediate return of all of Malone's vehicle identification
materials. The lease provided that upon cancellation, it would be
Washington's responsibility to return all vehicle identification
materials to Malone. After making two unsuccessful attempts to
deliver the letter, on May 5 and May 11, the Post Office returned
it to Malone on May 19, 1993. In the interim, Malone attempted
unsuccessfully to reach Washington by telephone, although it was
able to reach Washington's wife and inform her that the lease had
been canceled. It is undisputed that Washington himself never
received the certified letter. 
On May 21, 1993, the date of the accident, Washington was
transporting a load of cucumbers from Florida to Massachusetts. 
The haul had been arranged by ETC, a broker with no ICC operating
authority of its own that acts as an intermediary between shippers
and carriers and uses operators leased to licensed carriers. The
May 21, 1993, haul was the fifth Washington had transported for
ECT; Washington had begun accepting assignments from ECT on April
20, 1993.
At the time Washington's tractor-trailer collided with
Graham's automobile, Washington carried the registration for the
tractor-trailer that had been obtained by Malone and the tractor-
trailer was marked with the Malone vehicle identification insignia
that had been provided to Washington on April 15, 1993. On June
17, 1993, Malone reported to the Illinois Secretary of State that
the license plate transferred to Washington's tractor-trailer had
been lost or stolen. Malone sent a letter to Washington on June
18, 1993, reminding Washington that he was obligated under the
lease to return the Malone vehicle identification materials. 
Washington returned the materials on July 17, 1993.
Graham's complaint, originally filed in state court but
subsequently removed to federal district court in Massachusetts,
alleged that Washington had negligently operated the tractor-
trailer, and that Sabree, as owner of the tractor, was vicariously
liable for her injuries. Graham alleged that Malone was also
liable for her injuries because it (1) negligently entrusted the
tractor-trailer to Washington despite the intrastate limitation
that appeared on the face of his driver's license; (2) failed to
cancel the tractor-trailer's Illinois registration prior to the
accident; and (3) acted as Washington's "statutory employer"
because Washington's truck bore Malone's ICC vehicle identification
insignia at the time of the accident and still carried the Illinois
vehicle registration. Graham alleged that ECT had negligently
retained Washington to haul the load of cucumbers without first
determining whether he had a valid license and permits and had
negligently entrusted the tractor-trailer to Washington.
As Washington and Sabree did not appear, the district
court entered default judgments against them. The district court
did not hold a hearing on damages. Rather, the court reviewed 
documentary evidence, including affidavits submitted by Graham and
members of her family, concerning Graham's injuries. The district
court awarded $111,300 in damages on the claims against Washington
and Sabree. Of that total, $40,000 was awarded for Graham's pain
and suffering. 
In its Memorandum and Order, the district court, after
addressing several "thorny choice of law issues," granted summary
judgment in favor of Malone. 948 F. Supp. at 1129. The court
concluded that the lease between Washington and Malone had been
canceled, in accordance with its terms, on April 29, 1993, two days
after Malone had mailed a properly addressed certified letter to
Washington. See id. at 1132. As the lease had been terminated
several weeks prior to the accident, which occurred on May 21,
1993, the district court ruled that Malone could not be held liable
under either a negligent entrustment theory or the federal
"statutory employment" doctrine. The court further concluded that
Illinois insurance law provided no basis for holding Malone liable
after the cancellation of the lease. See id. at 1137. 
With regard to ECT, the district court initially denied
its motion for summary judgment. Upon reconsideration, however,
the court granted summary judgment in favor of ETC. See Graham v.
Malone Freight Lines, Inc., et al., 1997 WL 1068661 (D. Mass. June
11, 1997). The court ruled that ECT could not be held liable under
a negligent entrustment theory, as it had no control over the
tractor-trailer. Id. at *2. The district court further concluded
that Washington was an independent contractor, and that ECT could
not be held liable for Washington's "financial incompetence." Id. 
Finally, the court concluded that any negligence by ECT in failing
to determine whether Washington had ICC authority to transport
goods interstate was not a proximate cause of Graham's injuries,
such authority not being necessary for the transport of
agricultural products. See id. at *5. 
II.
Graham contends on appeal that the district court erred
in granting summary judgement in favor of Malone and ETC. She
further argues that the district court erred in refusing to allow
a jury trial with regard to damages against Washington and Sabree,
and that the amount awarded for pain and suffering $40,000 was
unreasonably low. We review de novo the district court's summary
judgment determination and its refusal to conduct a jury trial on 
damages. See Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999). We
will reverse the district court's damages determination only upon
a finding of clear error. See Soto v. United States, 11 F.3d 15,
18 (1st Cir. 1993). 
A. Claims Against Malone
We can add little to the district court's thorough
analysis of Graham's "negligent entrustment" and "statutory
employment" claims against Malone. The district court correctly
determined that the lease between Malone and Washington was
terminated according to its terms on April 29, 1993, two days after
Malone had mailed a certified letter of cancellation to
Washington's home address. Thus, the lease was terminated several
weeks prior to the accident, which occurred on May 21, 1993. 
Although Graham points out that the lease agreement was
a standard Malone form, she makes no convincing argument that the
lease's notice of cancellation provision, was unconscionable or was
for some other reasons invalid. Graham says that a carrier-lessee
such as Malone should make "reasonable efforts" to notify a driver
of the cancellation of a lease, but she does not explain why notice
given by mailing a certified letter to the driver's designated
address would be unreasonable. The written notice cancellation
method provided for in the lease seems a practicable and sensible
arrangement for parties like Washington and Malone, where
Washington was likely to spend much of his time out on the road
delivering loads. 
Graham contends that Malone acted negligently in
"entrusting" the tractor-trailer to one like Washington whose 
driver's license bore on its face an intrastate restriction
although Malone was apparently unaware of the fact when it entered
into the lease. Assuming, without deciding, that what Malone did
amounted to an "entrustment" of the tractor-trailer, which
Washington and Sabree in fact owned, the cancellation of the lease
relieved Malone of any liability under a "negligent entrustment"
theory. Once the lease was canceled, Washington ceased to operate
under Malone's authority, on its behalf, or with its permission. 
The absence of a valid lease precludes imposition of
vicarious liability against Malone under the "statutory employment"
doctrine, which holds carrier-lessees vicariously liable for
injuries resulting from the use of leased equipment. See, e.g.,
Jackson v. O'Shields, 101 F.3d 1083, 1086-87 (5th Cir. 1996)
(statutory employment doctrine applies only where valid lease of
equipment is in effect). That Washington's tractor-trailer bore
Malone's vehicle identification placards at the time of the
accident does not constitute grounds for imposing vicarious
liability against Malone. The lease provided that Washington was
responsible for returning these materials to Malone upon
cancellation. The notice of cancellation sent to Washington's
home on April 27, 1993 stated that any further use of Malone's ICC
placards would be unlawful. While Washington himself apparently
never received notice of cancellation, we conclude, as have other
courts, that the presence of Malone's ICC placards does not vitiate
the otherwise valid termination notice. See id. at 1088 (holding
that presence of carrier's ICC insignia at time of accident did not
provide basis for liability); see also Tartaglione v. Shaw's
Express, Inc., 790 F. Supp. 438, 442 (S.D.N.Y. 1992) (same). 
In her motion for summary judgment, Graham argued that
Malone was an insurer against injuries arising from Washington's
operation of the tractor-trailer under Illinois's mandatory
automobile insurance law, 625 Ill. Comp. Stat. Ann. 5/7-601 et
seq., having failed to cancel the truck's Illinois registration
until after the accident. The district court concluded that
cancellation of the lease precluded holding Malone liable under the
Illinois automobile insurance statute and that, in any event,
"[d]eeming Malone an insurer due to the failure to terminate the
registration is not a remedy permitted by Illinois law." 948 F.
Supp. at 1137. In her motion for reconsideration, Graham abandoned
reliance on the Illinois mandatory automobile insurance statute,
asserting instead that Malone was liable under Illinois statutes
requiring motor carriers operating within Illinois to retain on
file with the Illinois Commerce Commission a certificate or other
proof of insurance. See 625 Ill. Comp. Stat. Ann. 5/18c-4901 ("No
motor carrier or property shall operate within this State unless it
has on file with the Commission or its agent continuous insurance
or surety coverage in accordance with Commission regulations"). At
the time of the accident, Malone did in fact have a certificate of
insurance on file with the Illinois Commerce Commission. The
district court stated that Graham's shift in statutory focus "fails
to persuade me that my original ruling was in error." 1997 WL
1068661 at *5. 
We agree with the district court that Graham's
argumentative change does not assist her. The cancellation of the
lease undermines Graham's contention based upon the Illinois proof
of insurance provisions. Section 4903 of Chapter 18c, upon which
Graham now relies, provides, in part, that 
[e]ach certificate or other proof of insurance
or surety coverage shall have, as an implied
term, that the insurance or surety coverage
will remain in effect continuously until
notice of cancellation is filed in accordance
with Commission regulations, and that all
motor vehicles operated by or under authority
of the carrier will be covered, whether or not
such vehicles have been reported to the
insurance, surety, or other company.

625 Ill. Comp. Stat. Ann. 5/18c-4903 (emphasis supplied). Because
the lease had been canceled before the accident, Washington's truck
was no longer "operated by or under authority of" Malone. Thus,
the maintenance by Malone of the Illinois insurance certificate
provides no basis under Illinois law for holding Malone strictly
liable as Washington's insurer.
For the foregoing reasons, we conclude that the district
court did not err in granting summary judgment in favor of Malone
on all claims against it. 
B. Claims Against ECT
At the time of the accident, ECT was an ICC licensed
freight broker whose business involved matching customers (shippers
of freight) with carriers. As a broker, ECT was not required to 
carry motor vehicle property damage, or personal injury or cargo
loss insurance. Rather, ECT relied upon the carrier or operator to
maintain insurance. The shipment of cucumbers being hauled by
Washington from Florida to Massachusetts at the time of the
accident had been arranged by ECT. ECT claims that prior to the
shipment it contacted Malone to ascertain whether Washington was
properly licensed and insured. Malone contends that it has no
record of any inquiry having been made by ECT prior to the accident
of May 21, 1993 concerning Washington's status. As we are
reviewing a grant of summary judgment in favor of ECT, we shall
assume that ECT did not contact Malone prior to the May 21, 1993
haul to inquire as to Washington's status. 
Graham claims that ECT is liable because it negligently
failed to determine whether Washington was properly licensed and 
insured when it hired him for the Massachusetts cucumber shipment. 
The district court granted summary judgment in favor of ECT. The
court concluded that Washington was an independent contractor and
that ECT could not be held liable under New Jersey law for the
negligence of an independent contractor. See 1997 WL 1068661 at
** 3-5. 
Graham's claim of negligence against ECT is not based
upon principles of vicarious liability. Graham argues that ECT is
liable for its own negligent hiring of Washington to undertake the
cucumber haul. She claims that had ECT checked Washington's
driver's license, which carried an "intrastate only" restriction on
its face, ECT would not have hired Washington to take the cucumber
haul. 
Graham concedes that Washington was hired not as an
employee of ECT, but rather as its independent contractor. 
Employers are generally not liable for the negligent acts of the
independent contractors they hire. But as the district court
correctly noted, New Jersey law provides an exception to the rule
precluding liability where an employer knowingly hires an
incompetent independent contractor. See 1997 WL 1068661 at *2. 
But the evidence is lacking that ECT hired Washington with the
knowledge, actual or constructive, that Washington was incompetent
or could not safely drive his truck. See Cassano v. Aschoff, 226
N.J. Super. 110, 114, 543 A.2d 973, 976 (App. Div. 1988) (employee
failed to establish knowledge by landowner that independent
contractor lacked skill to perform competently). That Washington
performed incompetently after he was hired by ECT does not suffice;
nor does the fact that Graham raises a factual issue regarding
Washington's authority to operate his truck interstate given the
restriction placed upon his driver's license. See id. 
Graham argues that ECT's failure to inspect Washington's
license constitutes negligence. But there is no evidence that even
had ECT done so, it would have gained knowledge that would have
alerted it to any safety issues with regard to Washington's
driving. An explanation of the "AB2" restriction appears in the
Florida transcript of Washington's driving record, upon which
Malone had relied when it entered into the lease with Washington. 
That explanation suggests, supra pp. 4-5, that issuance of a
license valid only in Florida may result from applicant's retention
of a valid license from another jurisdiction. This explanation
does not link the "AB2" in-state restriction to a driver's
competence or poor safety record. Thus, there would have been no
obvious connection between Washington's Florida-limited driver's
license and his ability to safely drive the truck. Further, the
limitation appears to be tied into the existence of other valid
licensure elsewhere. On this record, we are unable to ascertain a
sufficient issue of fact as to whether ECT failed to exercise due
care in the hiring of Washington as an independent contractor, in
that it should have concluded that he was incompetent or unsafe. 
Finally, Graham contends that ECT is liable because it 
hired an independent contractor without liability insurance. As
the district court correctly held, New Jersey law does not impose
liability upon employers for the financial instability of
independent contractors. See 1997 WL 1068661 at **4-5.
We conclude that the district court properly granted
summary judgment in favor of ECT.
C. Damages 
Finally, Graham contends that the district court erred in
two respects in its computation of damages in connection with her
claims against defaulting defendants Washington and Sabree. First,
Graham argues that she was entitled to a jury trial with regard to
damages. Neither the Seventh Amendment nor the Federal Rules of
Civil Procedure require a jury trial to assess damages after entry
of default in these circumstances. See Fed. R. Civ. P. 55(b)(2)
(stating that court "shall accord a right of trial by jury to the
parties when and as required by any statute of the United States");
see also Eisler v. Stritzler, 535 F.2d 148, 154 (1st Cir. 1976)
(jury trial not required to assess damages after default). Thus,
Graham was not entitled to a jury trial on damages. 
Second, Graham argues that the district court's $40,000
award for pain and suffering was "unreasonable" because it was
equal only to the amount of lost earnings through the date of
judgment. The amount of damages awarded falls within the sound
discretion of the fact-finder, here the district court. See Soto
v. United States, 11 F.3d 15, 18 (1st Cir. 1993). An award for pain
and suffering that happens to be equal to lost wages is not, as
Graham suggests, per se unreasonable. Conclusory arguments
attacking the reasonableness of a damages award fall well short of
a demonstration of clear error. See id. We therefore uphold the
district court's pain and suffering award.
III.
For the foregoing reasons, the judgment is affirmed.